297 A.2d 351.

JOSEPHINE HAMAKER *vs.* RONALD GAGNON *et al.*

DECEMBER 1, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. The petitioner was a classified state employee with permanent status. On April 29, 1966, she was

dismissed by the appointing authority "for the good of the [s]ervice."[1] She appealed the authority's action to the Personnel Appeal Board which heard the matter in 1967 and rendered a decision sustaining the authority's action. The petitioner then filed a complaint in the Superior Court pursuant to the provisions of G. L. 1956, §42-35-15, as amended, by P. L. 1966, ch. 112, alleging that she was aggrieved by the board's action. After a hearing in that court in December, 1971, before a justice thereof sitting without a jury, a decision was rendered affirming the board's decision.

Thereafter petitioner filed the instant petition for certiorari pursuant to the provisions of G. L..1956 (1969 Reenactment) §42-35-16. She alleges therein that a judgment[2] was entered in the Superior Court affirming the board's action and that she, as a party in interest, is a party aggrieved by such action on the grounds that (a) the board committed prejudicial error in failing to determine whether the provi-

---

[1]General Laws 1956, §36-4-38, reads in pertinent part as follows:

"A classified employee with permanent status may be dismissed by an appointing authority whenever he considers the good of the service to be served thereby, stated in writing, with full and sufficient reason, and filed with the personnel administrator. Any removal or separation of an employee from the classified service not otherwise provided for in this chapter shall be deemed to be a dismissal. In every case of dismissal, the appointing authority shall on or before the effective date thereof give written notice of this action and the reason therefor to the employee and shall file a copy of such notice with the personnel administrator not later than three (3) days after the effective date."

[2]Section 42-35-16 in part provides:

"Any party in interest, if aggrieved by a *final judgment* of the superior court rendered in proceedings brought under §42-35-15, may, within seven (7) days from the date of *entry of such judgment,* petition the supreme court of the state of Rhode Island for a writ of certiorari to review any questions of law involved." (emphasis added)

sions of §36-4-39[3] had been violated by the authority in terminating her employment, and (b) the decision of the board was based on evidence that was immaterial to its inquiry and that on its face was not reliable, probative and substantial. On February 8, 1972, we ordered the writ to issue.[4]

The facts are substantially as follows. The petitioner was a senior clerk typist and a classified permanent state employee with over ten years of state employment. At the time of her dismissal she was working in the division of purchases. She had worked in other positions prior to working in the division of purchases in April, 1965. In May, 1965, she injured a finger while employed by the state and in July, 1965 had an operation performed removing certain nerves from the finger. She then took a leave of absence until she returned to work as a clerk typist in October, 1965. At that time she attempted to perform the duties of a clerk typist and thereafter she often had to seek medical attention for her finger. Her duties included typing, which she claimed was difficult if not impossible for her because of the removal

---

[3]Section 36-4-39 reads as follows:

"When an employee has become physically or mentally incapable of or unfit for the efficient performance of the duties of his position by reason of infirmities due to advanced age or other disability, it shall be the duty of the appointing authority to transfer such employee to less arduous duties or to order his retirement. The appeal procedure established for dismissals shall apply to retirements ordered under authority of this section."

[4]Mr. Justice Joslin did not participate in this order.

The papers contain no judgment nor do the jacket entries indicate that any was entered as required by the statute. In order to avoid quashing the writ, we sua sponte remanded the papers to the Superior Court and directed the parties to have a *nunc pro tunc* judgment entered. In due course a judgment was entered in the Superior Court affirming the board's decision and the papers were then returned to this court. *See Conn* v. *ITT Aetna Finance Co.,* 105 R.I. 397, 252 A.2d 184 (1969); *see also East Providence Credit Union* v. *Brown,* 104 R.I. 92 242 A.2d 428 (1968).

of nerves from her finger. The petitioner also states that her work included other duties as indicated by various exhibits presented by the state and testimony before the board. On April 1, 1966, petitioner's appointing authority designated her as satisfactory and recommended her for continued state service, but on April 29, 1966, he dismissed her for the "good of the [s]ervice."[5]

The appeal before the board was heard on August 24 and September 28, 1967. Testimony was presented at this hearing by the then state purchasing agent in the division of purchases, who was the appointing authority, by Mrs. Dorothy I. Eddy, who was the chief clerk in the division of purchases between May, 1965 and April, 1966, the period involved in this case, and by petitioner. Both petitioner and the state were represented by counsel at these hearings. Various documents were presented and marked as exhibits.

The appointing authority's testimony is in substance as follows. He had a study made of petitioner's absenteeism and was concerned about her absenteeism prior to the time of her injury. He concluded that she was continually absent and that she performed her work very slowly. He also had a study made of her work after the injury. These studies were reduced to writing and as a result of such studies he concluded that she was very inefficient and he gave his reasons for such conclusion. He said that he had

---

[5] The termination notice is in evidence as an exhibit as is a letter from the appointing authority to her which reads as follows:

"Due to your record of absenteeism, your record of work performance, and your apparent lack of interest in your work, this letter will serve as notification of termination from your position as Sr. Clerk-Typist (Position No. 1440-73) in this Division effective Friday, April 29, 1966 at 4:30 P.M.

"After careful thought I have made this decision for the good of the Service, in accordance with Title 36-4-38 of the General Laws of 1956 as amended."

occasion to observe the diligence with which petitioner performed her work and that based on such observation he did not feel she was diligent. He said that his final conclusion was that she was not able to do the work she was assigned to such an extent that it was affecting the morale of the whole division and he explained how it was effecting the morale of the division.

Mrs. Eddy, who was supervisor of personnel in the division of purchases, testified that petitioner was under her supervision; that she had cause to, and did, observe and study the efficiency and performance of petitioner, and she gave her conclusions, which were very critical of petitioner's work. She referred to petitioner's injury and said that she was taken off her work as a typist because she could not do that work and she was assigned to the mail desk where " * * * she spent just about all the time on the mail and did nothing else in the line of being in any other category."

The petitioner testified in defense of her position. She explained the injury to her finger and said that after the injury she was doing different kinds of work, such as working on the mail, filing purchase orders, running errands and delivering the mail. She referred to her talks to Mrs. Eddy about the effects of her injury and of her visits to her doctor. She testified that she was absent because of illness and pain from her finger. Records of her work performance are exhibits in the case.

On October 2, 1967, the board rendered a decision which sustained the action of the appointing authority. The pertinent portion of the board's decision reads as follows:

"The Board finds that there was sufficient evidence presented before it upon which the appointing authority * * * could have acted in terminating Mrs. Hamaker.

"Specifically, from the period April 1, 1966 to April 21, 1966 there were numerous days when the appellant

was absent with questionable justification. In addition, the tasks performed by her should have been performed in far shorter period of time than the time she utilized."

On December 13, 1971, a trial justice of the Superior Court heard petitioner's appeal from the board's decision in accordance with the provisions of §42-35-15.[6] After examining the record and listening to argument of counsel he rendered a decision sustaining the board's action.

He referred to the fact that shortly after petitioner came to work for the department in 1965 she injured her finger; that in a period of time of approximately one year the number of hours she took out for sick leave, for vacation time, and for leave without pay amounted perhaps to a little less time out than the time spent in actual employment; that from time to time she was assigned to opening the mail and that in connection with this she was asked to do some limited typing; and that the work sheets indi-

---

[6]Section 42-35-15, in pertinent part, reads as follows:

"(f) The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs.

"(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) in violation of constitutional or statutory provisions;
(2) in excess of the statutory authority of the agency;
(3) made upon unlawful procedure;
(4) affected by other error of law;
(5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

cated the amount of typing which she was asked to do and the amount of time which it took her to do it.

The trial justice relied to a great extent on Mrs. Eddy's testimony that petitioner was away from her desk a great deal of the time, that she did not have any significant interest in her work, and that she spent a great deal of time writing notes or other memoranda not associated with her work. He stated that Mrs. Eddy in her testimony indicated very, very clearly that this employee was an unsatisfactory employee all of the time that she supervised her and that the exhibits supported this evaluation. With respect to the evidence that petitioner had an injured finger, the trial justice found that the duties to which she was assigned were not so arduous as to require the use of this particular finger a good part of the time. In the circumstances he concluded that the nature and quantity of the work assigned to petitioner here was not such as to constitute arduous work that it might not be performed even with an injured finger. On the basis of the record before him he held that he could not say that the decision of the board was clearly erroneous.

The trial justice also held that the provisions of §36-4-39, see note 3, supra, providing for transfer to less arduous work were not material here because the dismissal was based largely upon evidence in the record which indicated that, petitioner did not apply herself utilizing the abilities and the physical capacity which she had to do the work to which she was assigned. Accordingly he sustained the board's decision.

I

One of the grounds upon which petitioner seeks relief here is that the judgment of the Superior Court and decision of the Personnel Appeal Board are erroneous and contrary to law in that their decisions approved the dismissal of a permanent classified state employee in violation of

§36-4-39. *See* note 3, *supra.* The petitioner argues that the board failed to make any finding as to whether the appointing authority had violated his duties under §36-4-39 in not assigning petitioner to a job in which there would be no typing or ordering her retirement; that the issue of the applicability of this section was in fact before the board; that the board and the appointing authority had the positive duty to make such a determination; and that since they failed to do this, we should reverse the board's decision and reinstate petitioner or remand the case to the Superior Court for further evidence on this issue. The petitioner cites our decision in *Ferrelli* v. *Department of Employment Security,* 106 R. I. 588, 261 A.2d 906 (1970).

We cannot agree with petitioner's argument on this issue. There is competent evidence in this record which shows that although petitioner was classified as a senior clerk typist, her duties, after the injury and because of her complaints about the effects of such injury, were changed. In view of such evidence we cannot fault the trial justice's conclusion that §36-4-39 was not really material here. The evidence supports his finding that " * * * the dismissal was based largely upon evidence in the record which indicated that the plaintiff did not apply herself utilizing the abilities and the physical capacity which she had, to the work to which she was assigned." We find no error in his ruling. We are convinced by the evidence that the appointing authority considered her physical condition during the period in question and that the board did likewise in passing on her appeal.

*Ferrelli* v. *Department of Employment Security, supra,* cited by petitioner, is not apposite here. In that case we said at 594, 261 A.2d at 910:

> "The absence of a finding by the board as to such agreement between the agency and the claimant's union is, in our opinion, significant of the board's misconception or overlooking of this issue."

That is not the situation in the case at bar where, as we have pointed out, there is legal evidence to show that the condition of petitioner's finger was considered. The absence of a finding on the question raised by petitioner here does not indicate or prove that the board misconceived or overlooked this issue.

## II

The petitioner's next contention is that the judgment of the Superior Court and the decision of the board are clearly erroneous in that they are contrary to the reliable, probative and substantial evidence on the record. Our duty under the statute is not to weigh the evidence, but merely to examine the record to determine whether there is any legal evidence or reasonable inference therefrom to support the findings of the board and the Superior Court. *Hardman* v. *Personnel Appeal Board,* 100 R. I. 145, 152, 211 A.2d 660, 664 (1965). As we have stated above, the board found that there was sufficient evidence presented before it upon which the appointing authority could have acted in terminating petitioner's services. It found specifically that from the period April 1 to April 21, 1966, there were numerous days when petitioner was absent with questionable justification. The petitioner argues that the finding of "questionable justification" represents a conclusion based on no probative evidence and is so vague as hardly to be considered a finding of fact. We agree that the finding of "questionable justification" is conclusory in character and we also agree that the better practice is to set out the evidence on which such a conclusion is based. *See Hooper* v. *Goldstein,* 104 R. I. 32, 241 A.2d 809 (1968). However, there is no merit to petitioner's statement that there is no probative evidence in the record to support the board's finding that there were numerous days during the period in question when petitioner was absent. There is legal evidence in the record to support this finding. The question of whether such absences were justified was for

the appointing authority and the board to decide, not this court. The question of credibility and the weight to be given to such evidence was for the board and not this court on certiorari.

In addition the board specifically found that "* * * the tasks performed by her should have been performed in far shorter period of time than the time she utilized." There is legal evidence in the record to support this finding. As we have said above, the question of credibility and weight of such evidence was for the board to decide.

In passing on petitioner's appeal, the trial justice, in accordance with the powers conferred upon the Superior Court by the provisions of §42-35-15(f) and (g), and on the basis of all the evidence and exhibits presented, found that the board's finding and decision were not clearly erroneous. Since the evidence supports the trial justice's findings we cannot say that he erred in sustaining the decision of the Personnel Appeal Board.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records certified to this court are ordered returned to the Superior Court with our decision endorsed thereon.

*Tillinghast, Collins & Graham, John J. Partridge,* for petitioner.

*Richard J. Israel,* Attorney General, *W. Slater Allen, Jr.,* Assistant Attorney General, for respondents.