JESSE EADDY, PETITIONER-APPELLANT, v. DEPARTMENT OF TRANSPORTATION, RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 16, 1985—Decided January 24, 1986.

Before Judges PRESSLER, BILDER and GRUCCIO.

*Nancy Iris Oxfeld* argued the cause for appellant (*Oxfeld, Cohen & Blunda,* attorneys; *Nancy Iris Oxfeld,* on the brief).

*Robert D. Blau,* Deputy Attorney General argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Robert D. Blau,* on the brief).

The opinion of the court was delivered by

GRUCCIO, J.S.C. (temporarily assigned).

This appeal is from a decision of the Civil Service Commission denying Jesse Eaddy credit for sick and vacation leave upon reinstatement to his position with the Department of Transportation.

Jesse Eaddy is employed as a truck driver for the State Department of Transportation. On November 9, 1982, after working on Route 22 "burning bumps" from the roadway, he was asked by his foreman upon his return to the Somerville yard if he had cleaned his truck that day. In fact, he had removed debris from the road work and accumulated trash, so he answered affirmatively. He knew his responsibility as a truck driver was to maintain the truck in a clean condition.

Thereafter, his foreman with another foreman inspected Eaddy's truck and found two styrofoam coffee cups, newspapers and a brown lunch bag. Without discussing this with Eaddy, his foreman reported the incident to the area supervisor and requested disciplinary action be taken.

On January 20, 1983, a preliminary notice of disciplinary action was served upon Eaddy charging him with insubordination for saying his truck was clean after failing to remove the items of trash found by the foremen. On three prior occasions Eaddy had been found insubordinate. Rules of the Department of Transportation provided that upon a fourth finding of insubordination, an employee would be removed from employment.

After a hearing by the Department of Transportation, a final notice of disciplinary action was issued on May 24, 1983, upholding the charge against Eaddy and removing him from employment. On June 10, 1983, this notice was amended to effect removal on June 15, 1983.

On appeal to the Civil Service Commission, a new hearing before an administrative law judge resulted in a decision on November 13, 1983, finding Eaddy innocent of the charges. Specifically, the findings were that he had violated no order of

a superior, had not refused or failed to follow instructions of a supervisor and the conduct complained of was not a serious breach of discipline. The order provided for reinstatement retroactive to June 15, 1983, with back pay.

On December 27, 1983, the Civil Service Commission upheld the decision of the order of the administrative law judge. The Department of Transportation then reinstated Eaddy and determined he was entitled to back pay of $7,983.23.

On March 1, 1984, the Department of Transportation informed Eaddy's attorney that in accordance with *N.J.A.C.* 4:1–5.5(a) Eaddy would not accrue vacation or sick days for the period he was not at work. Eaddy appealed the refusal by the Department of Transportation to credit him with sick days and vacation time. On September 21, 1984, the Civil Service Commission, deciding that appeal and a prior appeal, determined that Eaddy was entitled to holiday pay, but sustained the denial of sick leave and vacation leave credits. The Civil Service Commission relied on the decision of this court in *James v. N.J. State Prison,* 176 *N.J.Super.* 207 (App.Div.1980).

This court, in *James,* held that the award of back pay to a reinstated State employee who had been wrongfully discharged is limited to his loss of regular wages and does not include additional allowances for vacation time, holiday time, administrative leave time and overtime. *James,* 176 *N.J.Super.* at 208. In denying the recovery of these benefits, the court determined that since the employee performed no service for the State in connection with his employment during the period between his removal and reinstatement, he was in essence on leave during this entire period of absence. In support of its decision, the court stated:

> Vacation leave and all other regular and holiday leave being predicated upon service in employment, see, *e.g. N.J.S.A.* 11:14–1, 6 absent the performance of services there can be no entitlement to leave with pay. Otherwise, the employee is receiving a completely unearned and unauthorized windfall and one that, perforce, is paid out of public monies. [*James,* 176 *N.J.Super.* at 209].

The decision in *James* was based on two theories which we find inapplicable to the facts here. *James* concluded that the award of vacation leave, administrative leave and overtime credits to an employee who is cleared of all charges and is reinstated represents a "windfall." Second, it determined that the public interest is best served by the maximum savings of money. While we do not necessarily disagree with *James* on overtime, we do disagree on the question of vacation leave credits and decline to extend *James* to sick leave benefits not there considered. An analysis of the relevant case law in our State reveals a judicial philosophy concerning the reinstatement of wrongfully discharged public employees which is inapposite to the one expressed by the court in *James.*

We begin our review of the relevant case law with *West New York v. Bock,* 38 *N.J.* 500 (1962). In *Bock,* a fireman had initially been discharged for being late for duty on several occasions. On appeal the then Department of Civil Service reversed the fireman's removal and substituted a suspension without pay running from the date of his original suspension to the date of its order, a period of 15 months. *West New York v. Bock,* 71 *N.J.Super.* 143, 148 (App.Div.1961). Bock then appealed to this court. We determined that the Department of Civil Service did not have the statutory authority to impose a suspension without pay for more than 6 months. *Id.* at 152. On the township's appeal of that determination, our Supreme Court affirmed and rejected the argument of the Department of Civil Service that it is economically in the public interest not to require the State to pay wages to an employee who was suspended for longer than the maximum 6 months, stating:

> We cannot accept the argument of the Commission that the provision should be construed to permit suspension until the date of its decision on appeal is finally rendered, upon the theory that it is paramount that an employer should not be compelled, in a suspension case, to pay wages for a period during which no services were rendered. [*Bock,* 38 *N.J.* at 525].

Obviously, the court found no economic impropriety or violation of the public interest in paying an employee wages for a period during which he did not perform work for the public. The

focus of the court was not the maximum savings of public money but rather the determination of procedural rights and subsequent entitlements owed to a wrongfully discharged public employee.

This point was even more strongly emphasized by the Supreme Court in *Mastrobattista v. Essex County Park Commission*, 46 *N.J.* 138 (1965). In *Mastrobattista* two park police officers brought actions to recover salary for periods of their wrongful suspensions and dismissals. The Supreme Court held that when the Civil Service Commission ordered the patrolmen be restored to duty, it should have dealt with the issues of back pay and mitigation. Since it failed to do so, the matter was remanded for such determination. As guidance for the Civil Service Commission on remand the Supreme Court instructed:

> Current concepts of fair play in employment relationships suggest that persons in the public service who have been suspended or removed on charges later determined to be unfounded should be made whole insofar as possible; they should be entitled not only to restoration of duties but should also suffer no loss in their earnings. [*Mastrobattista*, 46 *N.J.* at 143].

While upholding the principle that mitigation and delays caused by the employers should be discounted from any amount of back wages awarded, the *Mastrobattista* court also held that in appropriate circumstances consideration must be given to "fees and expenses necessarily incurred by the appellants in obtaining vindication." [1] *Mastrobattista*, 46 *N.J.* at 150. Clearly, the focus of the court in *Mastrobattista* as in *Bock*, was to justly and equitably compensate a wrongfully discharged employee.

Three years later in *Mason v. Civil Service Commission*, 51 *N.J.* 115 (1968), the Supreme Court again addressed the question of awarding back pay with mitigation to wrongfully discharged civil service employees. And again, the court stated that an award for back pay must be based upon "an equitable disposition of just what allowances should be granted to the

---

[1]To ensure an equitable balance between the interests of employer and employee, fees and expenses may be allowed to the extent that they do not exceed the amount of the mitigation.

employee." *Mason,* 51 *N.J.* at 130.  The court wished to ensure that "the employee is not justly deprived of anything nor, on the other hand, unjustly enriched." *Ibid.*

Although *Bock, Mastrobattista* and *Mason* do not directly deal with the award of sick leave or vacation leave credits, a basic judicial principle clearly emerges from these decisions. Insofar as is possible, a fully vindicated employee must be made whole. *See also Chernoff v. Pandick Press, Inc.,* 440 *F.Supp.* 822 (S.D.N.Y.1977); *Foote v. State Personnel Comm.,* 118 *N.H.* 640, 392 *A.*2d 156 (1978); *Dunaway v. Dept. of Social and Health Services,* 90 *Wash.*2d 112, 579 *P.*2d 362 (1978). Equitable principles mandate that Eaddy be made whole by awarding him all that he would have been clearly entitled to had the Department of Transportation not wrongfully discharged him from State employment.

Awarding sick leave and vacation leave credit along with back pay does not constitute a windfall but merely gives the employee that which he would have earned had it not been for the wrongful discharge.  To follow the *James* rationale and find that "absent a performance of service, there can be no entitlement to leave without pay" would penalize the fully vindicated employee for a break in employment for which he was in no way responsible.  We see no windfall bestowed upon the employee under these circumstances, but rather a windfall to the public employer if we were to hold otherwise.

Moreover, contrary to the theory in *James,* vacation leave and sick leave are no less "compensation for services rendered," *James,* 176 *N.J.Super.* at 209, than are back wages. In explaining the nature of "fringe benefit" compensation, the Supreme Court of Appeals of West Virginia in *Farley v. Zapata Coal Corp.,* W.Va., 281 *S.E.*2d 238 (1981), stated what is a basic underpinning of labor negotiations:

> Vacation pay and other similar benefits are not gratuities which employers benevolently bestow upon their employees.  Rather they are integral compo-

nents of a compensation package bargained for and agreed upon by the parties. [at 242].

Consequently, in order to ensure that Eaddy not suffer "any loss in earnings," *Mastrobattista,* 46 *N.J.* at 143, he must be awarded both vacation leave and sick leave credits. To the extent that our analysis and decision here is inconsistent with *James,* we decline to follow it.

■ Finally, we must address the Civil Service Commission's codification of the *James* decision in *N.J.A.C.* 4:1–5(a) which provides in pertinent part that:

The employee does not accrue vacation, sick, or any other leave dependent upon actual service in employment during the separation period.

Since this regulation was published in the New Jersey Register on October 1, 1984, after the *James* decision and in reliance on the viability of *James,* our decision not to follow *James* requires us to overturn the regulation as invalid as a matter of law. *Mayflower Securities Co. v. Bureau of Securities,* 64 *N.J.* 85, 93 (1973).

We reverse the decision of the Civil Service Commission and remand for the award of sick leave and vacation leave credits.