Accordingly, the judgment is reversed and remanded for further proceedings consistent with this opinion.

---

IN THE MATTER OF STATE OF NEW JERSEY, DEPARTMENT OF CORRECTIONS, APPELLANT, v. COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted March 7, 1990—Decided March 28, 1990.

Before Judges KING, SHEBELL and KEEFE.

*Robert J. Del Tufo*, Attorney General, attorney for appellant (*Mary C. Jacobson*, Deputy Attorney General, of counsel; *Michael L. Diller*, Deputy Attorney General, on the brief).

*Steven P. Weissman*, attorney for respondent Communications Workers of America.

*Robert E. Anderson*, General Counsel, attorney for Public Employment Relations Commission.

The opinion of the court was delivered by

SHEBELL, J.A.D.

The State of New Jersey (alternately referred to as State, Department of Corrections and DOC) appeals from an adverse ruling of the Public Employment Relations Commission (PERC). The Communication Workers' of America (CWA) filed an unfair labor practice charge with PERC alleging that the DOC had violated the New Jersey Employer–Employee Relations Act by withdrawing the vacation time of physicians employed by DOC without prior negotiations with their union. The complaint as ultimately litigated alleged that on or about April 16, 1987, the DOC in violation of *N.J.S.A.* 34:13A–5.4(a)(1) and (5) had unilaterally rescinded the "policy granting physicians employed by the DOC ten additional days off per year in lieu of overtime worked during the calendar year."

Hearings were held before a PERC hearing examiner. Testimony was given regarding the purpose of the ten days vacation time and the method of accounting for the ten days vacation time (*i.e.*, whether the vacation time was compensation for overtime). On November 18, 1988, the hearing examiner issued his findings of fact, conclusions and recommended order, hold-

ing that the State had committed an unfair labor practice by unilaterally withdrawing the disputed vacation time without first negotiating with the CWA. The hearing examiner further concluded that the disputed vacation time was not overtime compensation and that the Department of Personnel (DOP) regulations alleged to be applicable did not prohibit the ten days vacation time.

Upon concluding that the applicable overtime rules did not preempt negotiations on withdrawal of the ten days of vacation time, the hearing examiner recommended that the State be ordered to:

1. Restore the *status quo ante* by reinstating the ten day leave policy.

2. Credit the affected physicians with any unused portion of the ten days for 1987, and the full ten days for 1988.

3. Negotiate with the CWA over any future attempt to terminate the ten day leave policy prior to actually terminating the policy.

The State filed exceptions to the hearing examiner's decision. On May 1, 1989, PERC issued its decision. PERC reviewed the record and concluded that the hearing examiner's Findings of Fact were thorough and accurate. After reviewing the applicable regulations PERC further concluded:

Under all the circumstances, we agree with the Hearing Examiner that these regulations did not mandate unilaterally eliminating the ten days off. That employees might not be entitled by law to overtime cash or overtime compensatory time off based on on-call status does not mean that an employer could not grant improved benefits in light of the round-the-clock demands of their jobs, demands which probably resulted in doctors working more than ten extra days. J–10 indicated that these regulations did not rule out the possibility that prison physicians might receive the extra days as vacation days. On this record, the extra days off were a form of vacation leave rather than overtime compensation. These days off were treated as vacation days: they were recorded as such, available at the start of the year, and scheduled the same way as other vacation days. When interviewed for jobs, doctors were told that they would receive these extra days off. An employer representative credibly testified that physicians had never received compensatory time off for overtime and were not eligible for it. The overtime and comp time boxes on their timesheets were left blank. The employee and employer, in short, both treated these days off as extra vacation days rather than overtime compensation days as defined in the rules and implemented by specified requirements and procedures. Given these circumstances, we hold that the employer violated subsections 5.4(a)(1) and (5)

> when it unilaterally eliminated the extra days off. We adopt the Hearing Examiner's recommended remedy....

PERC agreed with the hearing examiner's conclusion that the ten days off were not overtime compensation under *N.J.A.C.* 4A:3–5.2. PERC noted that the DOC was not preempted from negotiating "compensatory time off on an hour-for-hour basis under *N.J.A.C.* 4A:3–5.3(d)." Thus, PERC affirmed the hearing examiner's decision and adopted his proposed order.

The State moved to file an appeal out of time on July 14, 1989. We granted the State's motion. PERC joins the CWA in responding to the appeal and argues in favor of affirmance.

Since as early as 1974, DOC policy has allowed physicians employed by that agency to take an additional ten days of vacation time beyond the vacation time normally provided other employees. These vacation days were considered separate from any time granted for administrative leave or sick leave. The parties agree that physicians were told of this policy at the time they were interviewed and hired. The ten extra vacation days were credited to physicians at the beginning of the year. PERC's hearing examiner found that the physicians could use the ten extra days in the same manner they used regular vacation days. Further, the extra days were recorded by the DOC as vacation leave on its official time records, rather than as compensatory time, overtime, sick leave or administrative leave which were the other categories on the time forms. The parties also agree that physicians were not directed to maintain records of the actual time they worked while on call in exchange for the ten extra vacation days.

Personnel Bulletin 77-2 was issued on April 4, 1977. It explained the purpose of the ten extra day vacation policy as follows:

> All physicians employed at the operational units are unclassified and have an NL [non-limited] [1] workweek. Accordingly, all full time physicians will work a

---

1*N.J.A.C.* 4A:3–5.2 defines non-limited titles as those "having irregular or variable work hours." At the time of the PERC hearing, NL titles were defined

minimum of thirty-five hours per week, to be distributed over a normal operational schedule.

Since professional and ethical responsibilities require physicians to provide patient care on an around-the-clock basis, on-call schedules will be established within each institution to maintain such coverage during evening hours and weekends.

In order to compensate the medical staff who provide on-call coverage, they shall be granted ten (10) additional days of time off annually. However, these extra days leave cannot be taken until six months of on-call status has been completed. Incumbents who have completed this six month requirement are eligible immediately.

The author of Bulletin 77–2 explained during the PERC hearing that physicians were accorded the extra vacation time due to the nature of their work and the fact that they were on call around-the-clock. The hearing examiner concluded on the basis of this testimony that DOC believed that physician's "should receive an extra ten days off over those of other employees."

The State's argument is premised on the assertion that the ten extra days vacation time granted by the DOC to its physicians is overtime compensation. The State directs our attention to the fact that the DOC granted the ten extra vacation days in recognition of the fact that physicians were on call around the clock. Indeed, the personnel policy bulletin explaining the reason for the ten extra vacation days stated, "[i]n order to compensate the medical staff who provide on-call coverage, they shall be granted ten (10) additional days of time off annually." Thus, the State contends that the extra vacation time is overtime compensation and that such overtime compensation was prohibited by DOP regulations at the time the policy was discontinued. *See N.J.A.C.* 4A:3–5.3(a)2.

The State contended before the PERC hearing examiner and the Commission that DOP regulations completely preempted granting DOC physicians any extra days of vacation time.

under a different section of the Administrative Codes. Since the PERC hearing, several recodifications and revisions in the Code have occurred. *N.J.A.C.* 4A:3–5.2 was formerly *N.J.A.C.* 4:2–27.2. *See* 20 *N.J.R.* 848 (lists recodifications).

Now, however, the State concedes that it would be proper to negotiate with the CWA regarding hour-for-hour compensation with respect to on-call situations where DOC physicians are actually working. The State acknowledges that the DOP regulations it relied on do not completely preempt and foreclose negotiations over granting what it maintains is overtime compensation to DOC physicians. It is nonetheless the State's position that the PERC hearing examiner and Commission misconstrued and erroneously relied on certain evidence pertaining to DOC's practice of granting the ten extra days vacation time in that it is clearly overtime compensation.

The origin of this dispute stems from a set of revisions that were made in DOP overtime regulations as a result of the United States Supreme Court's decision in *Garcia v. San Antonio Metro. Transit Auth.*, 469 *U.S.* 528, 105 *S.Ct.* 1005, 83 *L.Ed.*2d 1016 (1985). *See* 18 *N.J.R.* 516. The *Garcia* case in essence made the federal Fair Labor Standards Act (FLSA), (29 *U.S.C.A.* § 201, *et seq.*) applicable to State and local governments. Thus, the Overtime Committee of the former Department of Civil Service decided to revise all overtime rules in order to bring the State's rules into accord with the FLSA. *See* 18 *N.J.R.* 516. Under the new overtime rules employees in exempt non-limited positions, such as DOC physicians, had "no claim or entitlement to compensation" for overtime resulting from on call situations. *See* 20 *N.J.R.* 519–20; *N.J.A.C.* 4:6–5.-1(a) (superseded by 4:2–27.5 and now codified as 4A:3–5.7(a)2). As a result of the revision of the overtime rules, the DOC decided to reevaluate its policy and to rescind the ten extra days of vacation time granted to physicians.

It is a well-established rule of law that a topic relating to conditions of employment cannot be subject to a negotiated agreement if it is specifically preempted by legislation. *See Matter of Bd. of Chosen Freeholders*, 116 *N.J.* 322, 330, 561 *A.*2d 597 (1989); *Bethlehem Tp. Bd. of Ed. v. Bethlehem Tp.*

*Ed. Assn.*, 91 *N.J.* 38, 44, 449 *A.*2d 1254 (1982). In the *Bethlehem* case the Supreme Court stated:

> [T]he mere existence of legislation relating to a given term or condition of employment does not automatically preclude negotiations. Negotiation is preempted only if the regulation fixes a term and condition of employment "expressly, specifically and comprehensively." [*N.J. State College Locals v. State Bd. of Higher Ed.*, 91 *N.J.* 18] at 30 [449 *A.*2d 1244 (1982)]. The legislative provision must "speak in the imperative and leave nothing to the discretion of the public employer." *In re IFPTE Local 195 v. State*, 88 *N.J.* 393, 403-04 [443 *A.*2d 187] (1982), quoting *State v. State Supervisory Employees Ass'n*, 78 *N.J.* 54, 80 [393 *A.*2d 233] (1978). If the legislation, which encompasses agency regulations, contemplates discretionary limits or sets a minimum or maximum term or condition, then negotiation will be confined within these limits. *Id.* at 80-82 [393 *A.*2d 233]. *See N.J.S.A.* 34:13A-8.1. Thus, the rule established is that legislation "which expressly set[s] terms and conditions of employment ... for public employees may not be contravened by negotiated agreement." *State Supervisory*, 78 *N.J.* at 80 [393 *A.*2d 233]. [*Bethlehem Tp. Bd. of Ed.*, 91 *N.J.* at 44, 449 *A.*2d 1254].

An equally well-established rule of law is that PERC's decisions are entitled to substantial deference. *Matter of Bd. of Chosen Freeholders*, 116 *N.J.* at 328–29, 561 *A.*2d 597. PERC has a special expertise with regard to the terms of public employment and review of its factual determinations is limited. *Ibid.*

The PERC hearing examiner correctly concluded that the extra vacation time was not preempted from being the subject of negotiations, nor were their allowance strictly precluded by DOP regulations. The hearing examiner concluded that the vacation days were not overtime compensation. This finding is supported by substantial evidence in the record, and therefore, as the hearing examiner found, the overtime rules are inapplicable and do not "expressly specifically and comprehensively prohibit the kind of additional leave time given to physicians." *See Matter of Bd. of Chosen Freeholders*, 116 *N.J.* at 330–31, 561 *A.*2d 597.

Vacation leave is unquestionably a form of compensation. *See Eaddy v. Department of Transp.*, 208 *N.J.Super.* 156, 162, 505 *A.*2d 162 (App.Div.1986); *James v. N.J. State Prison*, 176 *N.J.Super.* 207, 209, 422 *A.*2d 786 (1980). Thus, vacation leave is granted in exchange for services rendered, or in anticipation

of service to be rendered in the future. *See James,* 176 *N.J.* at 209, 422 *A.*2d 786. Here, the DOC granted its physicians ten additional days vacation in recognition of what was felt to be an unquantifiable amount of time they would spend on the job. Although the grant of extra vacation days is in a broad sense compensation related to anticipated overtime service, it is not *per se* overtime compensation.

Under DOP regulations, "overtime compensation" is defined as "cash overtime compensation or compensatory time off as permitted." *N.J.A.C.* 4A:3–5.2 (formerly *N.J.A.C.* 4:2–27.2). Compensatory time is generally distinguished from vacation time. According to the record, in order to obtain compensatory time employees are required to keep careful records of time worked in exchange for compensatory time off. Compensatory time is not granted until an employee actually works extra time. DOC physicians were not required to keep records of the extra time they worked. The DOC physicians received their ten extra days at the beginning of the calendar year. Thus, the PERC hearing examiner found that DOC physicians never received additional cash payments or "compensatory time off."

██ Unquestionably the grant of extra days off was linked to the fact that physicians worked unusual hours due to on call situations. However, these days off were not overtime compensation or compensatory time off. The fact that the DOC adopted a policy of providing total compensation to its physicians that included ten more days of vacation than that granted other employees in consideration for their services including on-call and overtime service does not make that compensation "overtime compensation." The DOC's decision to grant extra vacation days as part of a total job compensation program was within its discretion as it was not specifically prohibited by any law or regulations. *See Bethlehem,* 91 *N.J.* at 44, 449 *A.*2d 1254.

██ The hearing examiner also concluded that even if the vacation time were overtime compensation, it was not expressly

preempted from negotiations, and thus the State's unilateral withdrawal of this benefit was an unfair labor practice. *See Bethlehem*, 91 *N.J.* at 44, 449 *A.2d* 1254. These findings and conclusions of the hearing examiner were adopted and affirmed by PERC without dissent and are entitled to deference. *See Matter of Bd. of Chosen Freeholders*, 116 *N.J.* at 328–29, 561 *A.2d* 597.

The State now concedes that DOP regulations did not preclude negotiations over compensation for overtime, but maintains that such negotiations must be limited to hour-for-hour compensation. *See Bethlehem*, 91 *N.J.* at 44, 449 *A.2d* 1254 (negotiations must be confined to minimum or maximum terms when legislatively required).

Two DOP regulations are implicated. *N.J.A.C.* 4A:3–5.3(a)(2) (formerly *N.J.A.C.* 4:2–27.3) provides:

> Employees in the following groups may be eligible for overtime compensation for work performed beyond their regular work hours, but not more than 40 hours:

> . . . .

> 2. Employees in non-limited titles (NL, NE) who meet unusual work time requirements, at the discretion of the appointing authority.

The same regulation later states:

> Employees in non-limited titles (NL, NE) who meet unusual work time requirements may, at the discretion of the appointing authority, be compensated through either a provision for flexible work patterns or a grant of comparable amounts of time off to a maximum of one hour for each hour of unusual work time. They shall have no entitlement to cash overtime compensation. [*N.J.A.C.* 4A:3–5.3(d) 2].

In addition, *N.J.A.C.* 4A:3–5.7(a)2 (formerly *N.J.A.C.* 4:2–27.5) provides that "[e]mployees in exempt positions [such as DOC physicians] shall have no entitlement to compensation for [overtime]."

PERC found that these regulations did not preempt negotiations regarding overtime compensation because they left the decision of whether to grant overtime compensation to the discretion of the appointing authority. If the vacation time

granted to DOC physicians is considered to be purely overtime compensation and not actually vacation time, the topic of overtime compensation is nonetheless subject to negotiation because the regulations leave the decision to award overtime compensation to the DOC. *See N.J.A.C.* 4A:3–5.3(d)2; *Matter of Bd. of Chosen Freeholders,* 116 *N.J.* at 330–31, 561 *A.*2d 597. While there is no entitlement to overtime, there is no bar against it either. *See N.J.A.C.* 4A:3–5.7(a)2; *Bethlehem,* 91 *N.J.* at 44, 449 *A.*2d 1254.

The State relies on the Supreme Court's statement in *Bethlehem* that "[i]f the legislation, which encompasses agency regulation, contemplates discretionary limits or sets a minimum or maximum term or condition, then negotiation will be confined within these limits." 91 *N.J.* at 44, 449 *A.*2d 1254. Because *N.J.A.C.* 4A:3–5.3(d)2 only contemplates flexible work patterns or time off limited to hour-for-hour compensation for unusual work time, the State maintains that negotiations over compensation must be limited to hour-for-hour compensation.

We agree. If the physicians' compensation were found to be strictly overtime compensation, then negotiations would have to be limited to hour-for-hour compensation. *See N.J.S.A.* 4A:3–5.3(d)2. However, we conclude that there is no prohibition against the DOC granting its physicians extra vacation days as part of their total compensation even if that compensation is predicated upon their unusual work schedules and service. Thus, DOC physicians are not being compensated for on-call service and time through overtime compensation subject to overtime regulations, and therefore, the hour-for-hour limitations of *N.J.A.C.* 4A:3–5.3(d)2 is inapplicable.

The decision of PERC is affirmed.