[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Before this court is an appeal by the plaintiff, Andrew L. Baptista, from a decision of the Personnel Appeal Board (hereinafter "the Board") rendered March 6, 1991. The plaintiff claims that after a series of hearings conducted before it, the Board awarded to the plaintiff an inadequate amount of monetary and other relief. Jurisdiction for review in this Superior Court is pursuant to Rhode Island General Laws 1956 § 42-35-15 (1988 Reenactment).
Initially, the plaintiff was discharged from state service at the Department of Transportation on June 3, 1983. Although the Board subsequently reinstated said plaintiff to his former position on February 6, 1990, he nonetheless brings the instant action alleging that the Board failed to adequately compensate him for the period in which he was wrongfully suspended. The plaintiff, in his argument to this court, delineates a number of areas in which he feels he was not afforded sufficient remuneration for lost time. The court will address each issue herein.
Back Pay
In its decision of March 6, 1991, the Board granted the plaintiff back pay computed according to the position he held at the time of discharge along with cost of living increases and longevity raises. The plaintiff disputes the sufficiency of the above award because the amount was determined by reference to the position the plaintiff held when wrongfully discharged, a pay grade 19. The plaintiff argues that he should be compensated based on a grade 23 level, a position to which the plaintiff claims he would have been promoted had employment been continuous. He therefore claims that he is entitled to pay commensurate with the salary of a pay grade 23 employee. In support of his assertions, the plaintiff states that two employees were transferred from another section to his section upon his discharge. Said employees were then promoted to grade 23. Since Article 28 of his union contract recognizes seniority over transfers, the plaintiff argues that he should and would have been given a similar promotion even before the above transfers. Further, the plaintiff introduced to the Board evidence of a letter to the then Governor Garrahy written May 2, 1984 complaining that he felt his employment duties exceeded his job classification as drafts person. In response, a job classification survey was conducted and in September of 1984, the plaintiff was notified that the duties described in his correspondence to the Governor were suitable for a pay grade 23 classification.
The Board, however, responded in its decision that the state presented unrefuted evidence that promotions were not based on seniority. Further, the Board claims that there was no evidence that the plaintiff would have been promoted on merit. In the decision issued by the Board in February, 1990, reinstating the plaintiff to his former position, the work record of the plaintiff was discussed. Evidence was presented that, in 1979, the plaintiff used all sick leave and had to be given two additional weeks. In addition, he was orally reprimanded for frequently leaving his desk and sleeping. No evidence was presented to show he was a productive employee. The Board stated in its decision that the evidence was overwhelming that the plaintiff was a poor employee. However, the Board felt that a dismissal on this basis was not properly effectuated and so the plaintiff was reinstated.
There is no merit to [plaintiff's] statement that there is no probative evidence in the record to support the Board's finding that there were numerous days during the period in question when petitioner was absent. Hamaker v. Gagnon, 297 A.2d 351, 357 (R.I. 1972). The question of whether such absences were justified was for the appointing authority and the board to decide, not this court. Id.
Here, the Board obviously considered the plaintiff's absences unjustified and his work record substandard. Although the Board felt that dismissal was unwarranted on this basis, they nonetheless were not prepared to support the plaintiff in his claim that but for his dismissal, a promotion would have been forthcoming. This court agrees that there exists substantial evidence to support the Board's determination.
A court must not substitute its judgment for that of the agency in regard to the credibility of the witness or the weight of the evidence concerning questions of fact. Costa v. Registrarof Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988). Judicial review of an agency determination is limited to questions of law. The court does not weigh evidence on findings of fact but merely reviews them to see whether they support the agency's decision.St. Pius X Parish Corp. v. Murray, 557 A.2d 1214, 1218 (R.I. 1989). In respect to mixed questions of fact and law which were unresolved against petitioner by the Personnel Appeal Board when more than one inference is possible, the court may not substitute its judgment for that of the agency and must affirm the decision of the agency unless its findings are "clearly erroneous."Guarino v. Dept. of Social Welfare, 410 A.2d 425, 428 (1980).
Consequently, this court will refrain from weighing the facts but supports the agency's decision because there is evidence in the record upon which it is based.
Further, as a matter of law, the plaintiff is only entitled to back pay for the position in which he was employed at the time of discharge, a pay grade 19. Although in a wrongful discharge case, a plaintiff is entitled to reinstatement with back pay, [See Cipriano v. Personnel Appeal Bd., 330 A.2d 71 (R.I. 1975)], he may only receive that in which he already has an interest. The award of back pay is equitable in nature, meant to restore a party to the position he would have been in if not wrongfully suspended. Brewer v. Parkman, 918 F.2d 1336, 1343 (8th cir. 1990). In DelSignore, a police sergeant who was improperly promoted, and subsequently demoted argued to the court that he had a protected interest in his rank and should be returned to said rank. The defendants in that case argued that since the sergeant was never legitimately promoted, he was never entitled to said rank. DelSignore v. DiCenzo, 767 F. Supp. 423, 425 (D.R.I. 1991). However, the above court cited Loudermill,
470 U.S. at 539 n. 5, 105 S.Ct. at 1429 n. 5., for the proposition that because the defendant was hired and did hold the job, he was entitled thereto and denying him the same was a deprivation. Id. at 426. The federal court has specifically stated that a government employee may not receive the benefits of a position until he is appointed to it. Mackel v. Dept. ofTransp., F.A.A., 850 F.2d 682, 683 (Fed. Cir. 1988). Accordingly for an employee to meet his heavy burden of establishing a clear entitlement to retroactive promotion and the resulting back pay, he must demonstrate a reduction in his duly appointed or authorized position caused by the adverse personnel action. Id.
The court in this case refused to speculate on a possible promotion since evidence that a promotion would be awarded was not reflected by evidence in the record. See also; State Ex. RelHamlin v. Collins, 9 Ohio St. 137, 459 N.E.2d 520 (1984) (where the court stated that claims must be established with certainty).
Similarly, in the instant case, the evidence does not establish that the plaintiff would have been promoted but rather the Board, in weighing the facts, thought that a promotion would have been withheld. Further, since the evidence reflected that a promotion had not been effectuated at the time of suspension, the plaintiff was not deprived of the higher level position when he was suspended. Therefore, this court feels he is not entitled to the higher level back pay.
A related issue raised by the plaintiff is the loss of a second part-time job at which he was employed during his state service. The plaintiff claims that his income from this second job which he retained for a time after his suspension should not be deducted from the amount of back pay owed him by the state. He claims that decreasing his salary in this manner will place him in a worse position than when he was employed. Further, he claims that the loss of this second job was directly attributable to his suspension since, in searching for a position to replace his state job, he was unable to continue work at this second job. Consequently, the plaintiff claims he is also entitled to money for the time he lost working his second job. The Board, however, disagreed with the above arguments advanced by the plaintiff. They stated that the plaintiff's choice of employment was not their concern. The fact that he held his position prior to suspension does not alter the situation. The second job although it supplemented his funds prior to suspension replaced them after discharge.
The general rule is that where one is under contract for personal services and is discharged, it becomes his duty to dispose of his time in a reasonable way so as to obtain as large compensation as possible and to use honest, earnest and intelligent efforts to this end. Ryan v. Superintendent ofSchools of Quincy, 374 Mass. 670, 672, 373 A.2d 1178 (1978). The general principle is applicable to public employees who are reinstated after having been unlawfully discharged. Id.
This court agrees that the plaintiff in the instant situation could have kept his part-time job during this time and his decision to resign therefrom to seek alternative employment is irrelevant. Income from all other sources is to be deducted from the award of back pay not added thereto as the plaintiff argues. Rather than adding to his back pay award money which the plaintiff would have earned from his second job, this court will subtract any money earned from the above. However, said reduction will be effected only for the period of time he was employed in the above capacity subsequent to his suspension. In addition, any income earned from other employment will also be subtracted.
Medical Benefits
The second issue raised by the plaintiff was entitlement to medical benefits. In its decision, the Board awarded to the plaintiff all premiums he paid during his time of discharge plus any medical expenses which he paid that would have been covered by state Blue Cross. This amount totalled $9,699.60. The plaintiff however claimed entitlement to an additional $18,439. Although the Board stated that no evidence was presented to justify this sum, the plaintiff argued that the above amount represented the value of his health benefits. He claims that these benefits are an integral part of employee compensation similar to back pay. Because they are part of the compensation to which he is entitled, the plaintiff argues that this is sufficient evidence to justify his request. The Board stated that no justification for this amount was demonstrated by the plaintiff but rather that the subject amount was a repetition of the claim for $9,699.60.
Every element of compensation sought by a wrongfully discharged employee must be based on certainty. Id. at 523. Here, no evidence was presented supporting plaintiff's claim to $18,439. Evidence of the value of insurance benefits instead supports a sum due and owing of $9,699.60, the cost to plaintiff of obtaining comparable benefits and medical costs expended by the plaintiff. Therefore, this court supports the Board in its award of $9,699.60 as compensation to the plaintiff for lost medical benefits and medical costs.
Pension
For the reasons previously set forth, the plaintiff has argued that he is entitled to payments toward his pension fund based on the salary accorded a grade 23 rather than a grade 19 employee. This court, however, believes the same reasons for denying the plaintiff back pay on this basis apply to a denial of pension payments on a grade 23 rather than a grade 19 pay scale. Therefore pension payments on a grade 19 basis are upheld.
Vacation and Sick Pay
In the hearings before the Board, the plaintiff requested that he be allowed to accrue and be paid for 15 vacation days, 684 hours of sick leave, 11 holidays and 4 personal days for the seven years he was suspended. The Board denied said request stating that it views the above as time away from work with pay. The Board feels that by paying the plaintiff for time away from work in the form of back pay, granting him the above additional pay would be similar to paying him twice for time away from work.
The plaintiff disagrees with the Board claiming that according to his contract he is allowed to accrue this time. Since, because of his dismissal he was denied the opportunity to accrue these hours by the state's wrongful action, the plaintiff feels the state should be required to pay him therefor.
It is a well settled rule in wrongful discharge cases that the state cannot be required to pay twice. State Ex. Rel Hamlin
at 524. When the claim made and established is that the procedural requirements of law were violated for a period of time, in general we believe that the appropriate measure of damages to be awarded a public employee is solely the employee's lost wages and other benefits during the period of noncompliance.Gunsolley v. Bushby, 529 P.2d 950, 955. In Gunsolley, pay for accrued vacation time was awarded but only for the amount actually accrued and owing at the time of discharge. Id. The defendants in the above situation were attempting to convince the court to deduct severence and accrued vacation paid to plaintiff on discharge from the amount of back pay owed the plaintiff for his nine months of wrongful suspension. The court declined. Id.
A New Jersey court, however, granted additional allowances for vacation, holiday and administrative leave time. Eaddy v.Department of Transportation, 208 N.J. Super. 156, 505 A.2d 162, 163 (1986). The above court felt that said award merely gives the employee that which he would have earned had it not been for the wrongful discharge. Id. at 165. The court in Eaddy declined to follow an earlier decision which stated that the above leave, absent performance of service, is receiving a completely unauthorized and unearned windfall and one that, perforce, is paid out of public monies. Id. at 164 citing James v. NewJersey State Prison, 176 N.J. Super. 207, 422 A.2d 786.
This court is persuaded by the earlier decision of the New Jersey court. Although an award of back pay is fully justified in the instant situation, an award of vacation, sick, holiday and personal pay goes beyond the court's purpose of making the plaintiff whole. Since the plaintiff was not working, although deprived of an opportunity to do so, paying him twice for absence from work would represent a windfall and goes beyond reimbursement.
Interest
The plaintiff has requested and the Board agreed that interest be paid according to the statutory rate of 12% per annum for the period of suspension, June 3, 1983 to November 14, 1989. In addition, however, the plaintiff petitions this court to award interest at 12% on all monetary relief granted him, not merely back pay.
R.I.G.L. § 9-21-10 states in pertinent part:
 In any civil action in which a verdict is rendered or a decision made for pecuniary damages, interest at the rate of 12% per annum thereon from the date the cause of action accrued which shall be included in the judgment entered therein.
In the case at bar, the plaintiff is entitled to pecuniary damages for back pay, medical premiums and medical costs. Therefore, this court will grant to the plaintiff interest at the 12% statutory rate for monies recoverable as back pay and medical costs and premiums paid by plaintiff totalling $9,699.60.
Attorneys Fees
Lastly, the plaintiff has requested and been granted by the Board, attorneys fees pursuant to R.I.G.L. § 36-4-42. Said statute states as follows:
. . . The employee who is returned to his or her office or position by the appeal board following a review or public hearing shall be granted by the state of Rhode Island counsel fees, payable to his or her representative counsel, or fifty dollars ($50.00) for each day his or her counsel is required to appear before the appeal board in the behalf of the aggrieved employee.
The statute indicates that a successful employee may be awarded counsel fees or $50 per day for attendance before the Appeal Board. The Board, in its decision granting counsel fees pursuant to the above statute has failed to articulate whether these fees are in the amount of $50.00 per day or some other amount. Inasmuch as the statute indicates alternative methods of defining appropriate counsel fees, it is the responsibility of the Board to outline appropriate fees according to evidence of said fees presented to it by plaintiff's attorneys. Consequently, this court remands the issue of appropriate counsel fees to the Board and orders the Board to specify an amount to be awarded to the plaintiff.
Conclusion
For the reasons stated above and herein, the decision of the Board regarding back pay, compensation for loss of a second job, payment to the pension fund, medical benefit payments and costs and payment of accrued vacation, sick, personal and holiday time is upheld. In addition, this court upholds the grant of 12% interest on back pay at a grade 19 scale from June 3, 1983 to November 14, 1989 and also grants interest of 12% on medical benefit premiums and costs paid by the plaintiff. The issue of appropriate attorneys fees to be awarded pursuant to R.I.G.L. §36-4-42 is hereby remanded to the Board for determination.