**SCHOOL COMMITTEE OF the TOWN OF SOUTH KINGSTOWN**

v.

**STATE of Rhode Island COMMISSION FOR HUMAN RIGHTS and Rosemary R. Hobson.**

Nos. 93–471–MP, 93–558–MP.

Supreme Court of Rhode Island.

June 21, 1995.

William P. Robinson, III, Alicia Murphy Miligan, Edwards & Angell, Providence, Richard A. Mills, Out of State Christine Chinni, Out of State Raymond Bernstein, Hartford, CT, Out of State, for plaintiff.

Cynthia Hiatt, Com'n for Human Rights, Thomas J. Liguori, Jr., Westerly, for defendant.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on a petition for certiorari filed by the School Committee of the Town of South Kingstown seeking review of a judgment of the Superior Court affirming a decision and order of the State of Rhode Island Commission for Human Rights (rights commission) that was filed November 15, 1991. In its decision the rights commission found that Rosemary R. Hobson (Hobson) had been a tenured teacher employed by the School Committee of South Kingstown (school committee) for thirteen years prior to her discharge on April 1, 1987. She had taught kindergarten from 1983 to 1985.

As will later appear in this opinion, Hobson, upon her discharge, filed an appeal with the Commissioner of Education (education commissioner). The hearings before the rights commission and the education commissioner were based entirely on evidence that was submitted during a post-termination hearing before the school committee. These hearings developed the following facts, which are taken from the testimony and the findings of the school committee, the rights commission, and the education commissioner.

During the school years 1983–84 and 1984–85, the principal, Richard A. Corcoran, made a number of recommendations to Hobson in relation to organizational difficulties, negative parental perceptions, and complaints regarding her performance. In April of 1985 Hobson suffered a subarachnoid hemorrhage and was absent for the remainder of the school year. She returned to her teaching position in September 1985. Thereafter, a newly appointed principal, Richard J. Hines (Hines), made recommendations concerning the creation by Hobson of an "accountability checklist," skills she needed to teach the class, to create formal lesson plans, and the need to shorten the organized play time for the children. Hobson did not draw up the accountability checklist and did not submit the required lesson plans until asked to do so on two additional occasions in September and after being cited for insubordination for not complying with these requests in an October 3, 1985 memorandum from Hines to Superintendent Arthur B. Campbell.

Hines found the lesson plans to be incomplete and so inadequate that a substitute teacher was unable to follow them. Hines noted throughout the school year continued lack of adequate organization and deficiencies in instructional skills, as well as failure by Hobson to take appropriate corrective action regarding her pupils' behavior in the classroom. Hines also observed drastic mood changes in and temper flare-ups by Hobson. He observed her lack of interaction with other members of the school staff. On two occasions in September of 1985 and once in January of 1986, Hobson left members of the class unsupervised: once in the classroom, once in the cafeteria, and once in the outside playground. At the end of her evaluation Hines recommended that Hobson be placed in a higher grade, and beginning in the fall of 1986 she was assigned to teach sixth grade. Hobson only taught for twelve days in this grade and then sought leave by reason of her disabilities resulting from the brain hemorrhage she had experienced in April 1985. On October 9, 1986, Hobson and the school committee agreed that she would be placed on sick leave and that she would provide the school committee with all medical

records relating to her 1985 brain hemorrhage. Tests and evaluations performed during January and February of 1987 indicated residual deficits in brain function as a result of the subarachnoid hemorrhage.

A neurologist, Susan Soloway Spencer, M.D., rendered an opinion that Hobson's ability to teach at a new grade level was "unlikely" and her ability to teach kindergarten was uncertain. Hobson was referred by Dr. Spencer for testing to Kimberlee John Sass, Ph.D., a clinical neuropsychologist at the Yale University School of Medicine in New Haven. In addition, Dr. Francis Sparadeo, who was a clinical neuropsychologist at Rhode Island Hospital and on the Brown University faculty, testified on Hobson's behalf before the school committee. Doctor Sass concluded that Hobson's deficits were sufficiently severe so as to impair her capacity for returning to employment as a teacher.

After reviewing the medical documentation from Dr. Spencer and Dr. Sass, Superintendent Campbell recommended that Hobson be dismissed. It should be noted that Dr. Spencer later indicated that accommodation of Hobson in the classroom would involve the every-day presence of another teacher.

In a letter dated February 24, 1987, the chairman of the school committee informed Hobson that Superintendent Campbell had recommended her dismissal, setting forth fourteen reasons for this recommendation. The fourteen reasons are as follows:

"1. Lack of organization and structure in the classroom.

"2. Use of inappropriate instructional techniques.

"3. Inappropriate use of instructional materials.

"4. Failure to respond to supervision by her principal.

"5. Failure to prepare for instruction.

"6. Failure to follow through on assignments given to students.

"7. Inability to have productive interaction with parents and peers.

"8. Failure to take corrective action regarding pupils' classroom behavior.

"9. Failure to adapt to curriculum changes.

"10. Failure to adapt to day-to-day classroom situations.

"11. Displaying lack of knowledge and unfamiliarity with subject matter of grade level to which she was assigned.

"12. Failure to exercise supervision of children in a manner which affected the safety of these children.

"13. Failure to provide proper educational climate in the classroom.

"14. Failure to follow instructions given to her by her principal regarding lesson plans and parent newsletters."

Thereafter, the school committee held a pretermination hearing on March 31, 1987, and determined that she would be terminated, effective April 1, 1987. Hobson exercised the option to have a further hearing before the school committee. Hearings were conducted on May 4, May 8, May 28, and June 10, 1987. Following these hearings the school committee voted to uphold its pretermination decision to terminate her employment effective April 1, 1987, on the basis of reasons No. 1 to 10 and 12 through 14 set forth in Superintendent Campbell's letter as well as the medical evidence presented to the school committee.

On July 18, 1987, Hobson appealed the school committee's decision to the education commissioner pursuant to G.L.1956 (1981 Reenactment) § 16–13–4. On April 4, 1988, the education commissioner remanded the case to the school committee for clarification of its earlier decision. On June 13, 1989, the school committee again affirmed its 1987 decision to terminate Hobson's employment on the basis of the same testimony that had been elicited at the hearings that had taken place from May 4 to June 10, 1987. After the school committee's decision on remand, the education commissioner again considered the case pursuant to an agreement between the parties to rely upon the record of the proceedings before the school committee. The education commissioner considered this evidence and rendered a decision dated October 2, 1990, in which he upheld the school committee's decision to terminate Hobson's employment. He determined that the school committee had demonstrated by a prepon-

derance of the evidence (in fact by clear and convincing evidence) that good and just cause supported the school committee's decision to terminate Hobson's employment. Further reference to the education commissioner's decision will be made hereafter.

On February 11, 1988, Hobson filed a charge against the school committee with the rights commission. In this complaint she alleged that the school committee had discriminated against her on the basis of a mental or physical handicap in terminating her employment in violation of G.L.1956 (1986 Reenactment) § 28–5–7.

Hearings on this complaint were held on October 31, 1989, and February 28, 1990, before a hearing officer of the rights commission. At these hearings the parties agreed to submit as evidence transcripts of the hearings before the school committee held on March 31, 1987; May 4, 1987; May 8, 1987; May 28, 1987, and June 10, 1987, as well as the exhibits that had been introduced before the school committee during the foregoing hearings. The only additional testimony presented to the rights commission was the testimony of Dr. Marilyn Campbell, director of the Division of Rehabilitation Services within the Department of Education of the State of Connecticut. On or about October 17, 1990, the school committee submitted into evidence the decision of the education commissioner dated October 2, 1990. The rights commission on December 12, 1990, responded by accepting the decision of the education commissioner into evidence. On November 15, 1991, the rights commission issued its decision and order, finding that Hobson had been discharged because of her handicap (the subarachnoid hemorrhage and the residual effects thereof, which had not dissipated at the time of her return to her teaching duties). The rights commission found that the school committee had failed to make a reasonable accommodation for Hobson's handicap.

Since the rights commission was unable to determine Hobson's ability to perform as a kindergarten teacher on the basis of the evidence that had been adduced, the rights commission issued the following order:

"I. A violation of Rhode Island General Laws Section 28–5–7 having been found

the Commission hereby orders the [school committee]:

A. To cease and desist from all unlawful employment practices in violation of Rhode Island General Laws Section 28–5–7;

B. To offer [Hobson] a three month trial teaching period in a kindergarten class * * * which includes accommodation to her handicap, including but not limited to, payment of up to $500 to a rehabilitative team (selected with the agreement of both parties) and which commences as soon as possible but no later than September 1992;

C. To afford such other relief which will be determined after a hearing.

II. The attorney for [Hobson] is directed to file his Motion and Memorandum For Award of Attorney's Fees including appropriate documentation, on or before November 29, 1991."

The school committee appealed from this decision and order to the Superior Court pursuant to G.L.1956 (1988 Reenactment) § 42–35–15. In a written decision a justice of the Superior Court affirmed the decision and approved the rights commission's reliance upon the Americans with Disabilities Act of 1990(ADA), 42 U.S.C. §§ 12101 through 12213 (1988 Supp. II), even though the employment discrimination provisions of that act took effect in July 1992, long after the events leading up to Hobson's discharge. In accordance with the provisions of § 42–35–15, the Superior Court justice held that the findings of the rights commission of illegal discrimination based on a handicap was well within the discretion of that tribunal. At no time did the trial justice consider the decision rendered by the education commissioner that was ultimately approved by the Board of Regents for Elementary and Secondary Education (regents) on October 16, 1991. Hobson has appealed the decision of the education commissioner as approved by the regents to the Superior Court. The appeal from the education commissioner's decision remains pending in the Superior Court.

On the issue of handicap the education commissioner on the same evidence heard by

the rights commission found that there was no nexus established between Hobson's deficits in brain function and the performance deficiencies she exhibited in the period following her recovery. The education commissioner concluded as follows:

"The medical experts who evaluated Ms. Hobson uniformly agreed that there were residual effects from the brain hemorrhage and that these deficits *could* possibly prevent her from functioning adequately as a kindergarten teacher. All of the medical experts opined that the test of her capacity to continue as a teacher was her performance on the job. None of the medical experts reviewed her performance record for the 1985–86 school year to determine which, *if any*, professional inadequacies were attributable to the residual deficits in brain function from which she suffered. Without such review it would be erroneous to conclude that the appellant's negative performance in 1985–86 was related to the residual effects of the brain hemorrhage. On the same basis, no competent evidence exists that she is medically incapable of performing her teaching duties. For this reason, we reject medical incapacity as an additional basis for discharge."

We are of the opinion that it is unseemly and inappropriate for two state agencies to arrive at completely opposite conclusions based upon substantially the same evidence, particularly when one agency has educational expertise (the education commissioner) and the other does not (the rights commission).

■ The rights commission is not an agency that is clothed with the authority to review decisions by the education commissioner, although it has coordinate powers to adjudicate claims of unfair-employment practices and specific violations of § 28–5–7 discrimination because of a handicap. It must be noted that Hobson in this case voluntarily appealed her dismissal to the education commissioner just as she filed a complaint voluntarily with the rights commission. It is necessary for the Superior Court and ultimately this court to attempt to harmonize the overlapping jurisdiction of these two agencies. Because the Superior Court has not yet entertained the appeal from the education com-

missioner's decision, no such attempt to harmonize these two decisions took place in that court wherein only the appeal from the rights-commission decision was entertained. Although the education commissioner's decision has been approved by the regents, it is not yet a final decision since an appeal is pending in the Superior Court.

■ We conclude that an error of law was committed by the rights commission and by the Superior Court justice in applying standards of the ADA to this case. It is elementary that the ADA is prospective in its application and could have no bearing on the outcome of events that occurred even before its enactment and an even greater period before its relevant provisions took effect. This error of law would require a remand of the case in any event.

However, we further require that on remand the Superior Court justice consider both the decision of the rights commission and the decision of the education commissioner that preceded it. If both agencies consider the same question on the same evidence, then we would authorize the trial justice to give effect to the first decision unless it is clearly erroneous on the entire record.

For the reasons stated, the petition for certiorari is granted. The judgment of the Superior Court is quashed. The case is remanded to the Superior Court for review of both the decisions of the rights commission and the education commissioner so that the jurisdiction and effect of these two agencies may be harmonized in order to prevent an unseemly and inappropriate conflict between two coordinate tribunals.

BOURCIER, J., did not participate.