DECISION
The matter before this court involves several consolidated matters arising out of the termination of a tenured kindergarten teacher, Rosemary R. Hobson (plaintiff), from the Town of South Kingstown school system (hereinafter "the school department"). First, this must address plaintiff's appeal from the decision of the Board of Regents for Elementary and Secondary Education which denied two appeals by plaintiff and upheld plaintiff's discharge from the Town of South Kingstown by the School Committee. Second, this court must reconsider, on remand from the Rhode Island Supreme Court, the Commission for Human Rights' decision that the Town of South Kingstown had unlawfully discharged Rosemary Hobson because of a handicap. Finally, upon the explicit direction provided to this court from the Rhode Island Supreme Court inSchool Committee of the Town of South Kingstown v. State of RhodeIsland Commission for Human Rights and Rosemary R. Hobson,659 A.2d 1099 (R.I. 1995), this court must harmonize these incompatible decisions of the Education Commissioner and the Commission for Human Rights in order, ultimately, to determine the propriety of plaintiff's termination from her position as a tenured teacher.
 Facts
Prior to the termination of Ms. Hobson on April 1, 1987, the South Kingstown School Committee employed Ms. Hobson as a tenured teacher.[1] (Campbell 5/4/87, Tr. at 53). Specifically, Ms. Hobson served as a kindergarten teacher during the 1982-83, 1983-84, 1984-85 and 1985-86 school years. (Id.) Throughout Ms. Hobson's tenure, the school department implemented formal evaluation procedures to evaluate her performance. (Hines 5/28/87, Tr. at 35-56, 48). During the 1982-1983 school year, school officials observed serious deficiencies in Ms. Hobson's performance in the areas of student discipline, instructional techniques, general classroom performance and organization. (Hines 5/28/87, Tr. at 2; Campbell 5/4/87, Tr. at 53; Campbell 3/31/87, Tr. at 9-10). Furthermore, school department personnel records indicate that these problems, as well as negative parental perceptions, persisted throughout the 1983-84 and 1984-85 school years. (See Ex. 2, 1983-1984 Professional Staff Evaluation 7/5/84, Ex. 3, 1984-1985 Professional Staff Evaluation 6/11/85, 9/17/85).
In April, 1985, Ms. Hobson suffered a subarachnoid hemorrhage and did not return to work for the remainder of that school year. (Campbell 3/13/87, Tr. at 14; Ex. 6, Spencer Medical Report of Ms. Hobson 1/12/87). Ms. Hobson did, however, resume her teaching duties at the start of the 1985-1986 school year. Beginning in September, 1985, the newly hired principal, Richard J. Hines, observed and evaluated teachers in order to develop objectives for each teacher for the 1985-1986 school year. (Education Commissioner decision 10/2/90 at 3). Hines identified several deficiencies in Ms. Hobson's performance and, in a written memo, Hines directed Ms. Hobson to draft an accountability checklist, to prepare formal lesson plans for his review, to shorten organized play time in the classroom, and to send out a newsletter. (Hines 5/28/87, Tr. at 4, 7, 10-11). Mr, Hines testified that because Ms. Hobson failed to comply with his directives, he cited Ms. Hobson for insubordination on October 3, 1985. (Hines 5/28/87, Tr. at 7). In addition to this citation of insubordination, Mr. Hines conducted several formal and informal observations of Ms. Hobson's classroom throughout the school year and noted persistent, serious deficiencies in her teaching performance. (Id.) On the basis of these observations, Principal Hines rated Ms. Hobson's performance as a kindergarten teacher as unsatisfactory and recommended that Superintendent Campbell transfer Ms. Hobson to a teaching position in the sixth grade. (Hines 3/31/87, Tr. at 65-71; Hines 5/28/87, Tr. at 53). Supt. Campbell considered terminating Ms. Hobson's employment at that time, but agreed to transfer Ms. Hobson to the sixth grade. (Campbell 6/10/87, Tr. at 6). In the fall of 1986, Ms. Hobson began teaching sixth grade and immediately experienced heightened performance problems in the first days of her new teaching assignment. (Campbell 5/4/87, Tr. at 54). As a result of these performance problems, Supt. Campbell met with Ms. Hobson's attorney, Mr. Ligouri, who attributed Ms. Hobson's performance deficiencies to residual effects of her brain injury. (Letter to Campbell from Ligouri, 10/9/86). As a result of these discussions, on October 9, 1986, Ms. Hobson and the School Committee agreed that the School Committee would place Ms. Hobson on paid sick leave and Ms. Hobson would both provide her medical records to the School Committee and submit to a medical examination by a physician chosen by the School Committee. (Id.;
Letter from Campbell to Ligouri, 10/15/86). The school committee chose a neurologist, Susan Soloway Spencer, M.D., to examine Ms. Hobson. (Spencer 5/8/87, Tr. at 77). Dr. Spencer, in turn, referred Ms. Hobson for testing to Kimberlee John Sass, Ph.D., a clinical neuropsychologist at the Yale University School of Medicine in New Haven. (Spencer 5/8/87, Tr. at 90-91). Dr. Sass performed a battery of standardized tests in order to more accurately assess the functioning of Ms. Hobson's motor, sensory, and nervous systems. (Spencer 5/8/87, Tr. at 104-105). Dr. Sass concluded that Ms. Hobson experienced residual brain function deficiencies from the April, 1985, subarachnoid hemorrhage that would impair her capacity to work as a teacher. (Ex. 8, 2/10/87 Neuropsychology Report by K. Sass). As a result of her own examination and Dr. Sass' testing, Dr. Spencer also opined that Ms. Hobson's ability to teach at a new grade level was "unlikely" and her ability to teach kindergarten was uncertain. (Spencer medical report of 1/30/87). After reviewing all of the medical records and Ms. Hobson's job performance evaluations, Supt. Campbell recommended to terminate Ms. Hobson's employment. (Ex. 1, Letter to R. Hobson from J. DeLuca, 2/24/87).
 Procedural History
1. Proceedings before the School Committee
On March 31, 1987, the School Committee conducted a pre-termination hearing, after which, the School Cornmittee decided to terminate Ms. Hobson's employment effective April 1, 1987. (Ex. 14, Letter to Hobson from DeLuca, 4/1/87). The School Committee notified Ms. Hobson of its decision to terminate in a letter dated April 1, 1987. The School Committee stated that it based its decision to terminate Ms. Hobson on the following reasons:
 "1. Lack of organization and structure in the classroom.
 2. Use of inappropriate instructional techniques.
 3. Inappropriate use of instructional materials.
 4. Failure to respond to supervision by the principal.
 5. Failure to prepare for instruction.
 6. Failure to follow through on assignments given to students.
 7. Inability to have productive interaction with parents and peers.
 8. Failure to take corrective action regarding pupils' classroom behavior.
 9. Failure to adapt to curriculum changes.
 10. Failure to adapt to day to day classroom situations.
 11. Displaying lack of knowledge and unfamiliarity with subject matter of grade level to which she was assigned.
 12. Failure to exercise supervision of children in a manner which affected the safety of these children.
 13. Failure to provide proper educational climate in the classroom.
 14. Failure to follow instructions given to her by the principal regarding lesson plans and parent newsletters.
 It is further determined that the medical evidence presented at the pre-termination hearing clearly established that Mrs. Hobson's present medical condition renders her unable to properly carry out her duties as a teacher and that this condition is such that the School Committee cannot reasonably accommodate the same without posing a hardship on the School Committee's program, enterprise or business."
 (Ex. 14; Letter from Deluca to Hobson 4/1/87).
Following this decision, Ms. Hobson exercised her right to an additional hearing before the School Committee, held on May 4, May 8, May 28 and June 10, 1987.[2] On June 15, 1987, the School Committee notified Ms. Hobson that it had upheld its decision to terminate her employment. The material portions of the School Committee's letter read as follows:
 "* * * after review of all data relevant to the dismissal of Mrs. Rosemary Hobson as a teacher in the South Kingstown School System, the Committee votes to uphold its decision to terminate Rosemary Hobson based upon the reasons stated in the April 1, 1987 letter to Mrs. Hobson from Mr. James DeLuca. The reasons include items numbered 1 through 10 and 12 through 14 as well as the medical evidence presented to the Committee."
(June 15, 1987 Letter from DeLuca to Hobson, Attachment B).
2. Proceedings before the Commissioner of Education
On July 18, 1987, Ms. Hobson appealed the School Committee's decision to revoke her tenure. Ms. Hobson also challenged the procedures followed by the School Committee as violative of her procedural due process rights.
a. Ms. Hobson's Procedural Due Process Challenge
On April 4, 1988, the Commissioner remanded the matter to the School Committee for clarification of its decision. Subsequently, the School Committee did not take immediate action in processing the remand. On March 7, 1989, Ms. Hobson appealed her dismissal alleging that the School Committee's failure to take any action since the April 4, 1988 remand resulted in a denial of her due process rights under state and federal law. After hearing on April 17, 1989, the Commissioner concluded that the committee's failure to take prompt action amounted to "unreasonable delay in violation of Mrs. Hobson's right to a hearing and written decision * * * within a reasonable time under the Teachers' Tenure Act." (Ex M; 5/17/89 Commissioner Decision at 7). However, the Commissioner determined that this statutory violation did not rise to the level of a constitutional deprivation because the Commissioner found "an absence of prejudice to the petitioner's protection of her right to continued employment in the South Kingstown School System." (Id. at 10) The Commissioner determined that the appropriate remedy was to order a hearing within sixty days and give Ms. Hobson an opportunity to prove any actual monetary damages she suffered as a result of the unreasonable delay from July 5, 1988 to April 17, 1989. Ms. Hobson appealed the Commissioner's decision to the Board of Regents for Elementary and Education. On December 14, 1989, the Board affirmed the Commissioner's decision and stated "we will assume that the hearing officer will adhere to precedent set in previous commissioner's decisions which considered lost earnings as an element of damages." (Id.). Hobson demanded damages. The School Committee denied that request on July 3, 1989. Hobson appealed this denial on July 13, 1989. This appeal regarding an alleged denial of procedural due process was consolidated with Hobson's appeal of her underlying unlawful termination claim. On October 2, 1990, the Commissioner of Education affirmed the School Committee's decision to dismiss Ms. Hobson and denied any interim compensation from the date when he found her dismissal to be deficient to the time when a hearing on remand actually occurred. Hobson appealed this decision to the Board of Regents, which affirmed the Commissioner's decision on October 16, 1991. Ms. Hobson appealed that decision to this court.
b. Ms. Hobson's appeal of the termination
While Ms. Hobson sought a remedy for the procedural violation, she also pursued her appeal of the underlying termination. On June 13, 1989, the School Committee, without taking any additional evidence, affirmed its 1987 decision to terminate Ms. Hobson. Ms. Hobson appealed the June 13, 1989 decision to the Commissioner of Education. The parties agreed to submit a complete record of the previous proceedings to the Commissioner of Education in lieu of presenting additional evidence. (Ex. 31 at 1). After de novo review of the evidence, on October 2, 1990, the Commissioner of Education affirmed the School Committee's prior decision to terminate Ms. Hobson's employment. The Commissioner of Education found that the School Committee had demonstrated by clear and convincing evidence that good and just cause supported the School Committee's decision. "Weighed together, the supporting reasons go far beyond meeting the necessary burden of proof which must be met by a school committee defending its termination of a tenured teacher." (10/2/90 Decision at 9). In reviewing the evidence de novo, the Commissioner also identified as additional "good and just cause" for termination "a persistent pattern of non-cooperation by Ms. Hobson." (Id. at 10). Furthermore, the Commissioner rejected the School Committee's finding that Ms. Hobson was "medically unable to perform her teaching duties." Specifically, the Commissioner found:
 "The evidence was uncontradicted that the appellant has residual deficits in brain function as a result of a subarachnoid brain hemorrhage she suffered in April of 1985. However, in order to find that these residual deficits precluded her from functioning as a kindergarten teacher, the evidence must establish a nexus between these deficits in brain function and the performance deficiencies she exhibited in the period following her recovery. No such evidence is contained in this record. [footnote omitted] The medical experts who evaluated Ms. Hobson uniformly agreed that there were residual effects from the brain hemorrhage and that these deficits could possibly prevent her from functioning adequately as a kindergarten teacher. All of the medical experts opined that the test of her capacity to continue as a teacher was her performance on the job. None of the medical experts reviewed her performance record for the 1985-1986 school year to determine which, if any, professional inadequacies were attributable to the residual deficits in brain function from which she suffered. [footnote omitted] Without such review it would be erroneous to conclude that the appellant's negative performance in 1985-1986 was related to the residual effects of the brain hemorrhage. On the same basis, no competent evidence exists that she is medically incapable of performing her teaching duties. For this reason, we reject medical incapacity as an additional basis for discharge."
(Id. at 10-11).
On October 5, 1990, pursuant to R.I.G.L.,. sec. 16-13-4 and16-60-6(9)(n), Ms. Hobson appealed the decision of the Commissioner of Education to the Board of Regents for Elementary and Secondary Education for the State of Rhode Island. On October 16, 1991, the Board of Regents affirmed the Commissioner of Education's decision to terminate Ms. Hobson's employment. (10/16/91 Decision of Board of Regents at 1). On November 1, 1991, Ms. Hobson appealed this decision of the Board of Regents to the Superior Court. This appeal has been consolidated with Ms. Hobson's appeal regarding the procedural due process issue and both are now properly before this court.
3. Proceedings before the Commission for Human Rights
On February 12, 1988, Ms. Hobson brought a charge with the Commission for Human Rights in which she claimed that the School Committee had discriminated against her because of a handicap when it terminated her employment. As a result of these charges, on November 29, 1988, the Commission for Human Rights brought a complaint against the School Committee, alleging violations of R.I.G.L. 28-5-7. On October 31, 1989 and February 28, 1990, a hearing officer for the rights commission conducted hearings to resolve this complaint. The parties agreed to submit as evidence the transcripts of the hearings before the School Committee conducted on March 31, 1987, May 4, 1987, May 8, 1987, May 28, 1987 and June 10, 1987, as well as all exhibits submitted at those hearings. In addition to this evidence, the rights commission accepted both the testimony of Dr. Marilyn Campbell, Director of the Division of Rehabilitation Services for the Connecticut State Dept. of Education, as well as the October 2, 1990 decision of the Education Commissioner.
In a written decision issued on November 15, 1991, the rights commission found that the School Committee had unlawfully discharged Ms. Hobson because of her handicap, the residual effects of her subarachnoid hemorrhage, and had failed to make a reasonable accommodation for her handicap. As a remedy for this violation, the rights commission ordered the School Committee to (1) "cease and desist from all unlawful employment practices in violation of Rhode Island General Laws Section 28-5-7;" (2) "to offer [Hobson] a three month trial teaching period in a kindergarten class * * * which includes accommodation to her handicap;" (3) "To afford such other relief which will be determined after a hearing." (See November 15, 1991 Order).
Pursuant to R.I.G.L. 42-35-15, the School Committee appealed from this decision to the Superior Court. On August 31, 1993, a justice of the Superior Court filed a written decision affirming the rights commission's November 15, 1991 decision and order. The School Committee appealed that decision to the Supreme Court.
4. Proceedings before the Rhode Island Supreme Court
In School Committee of the Town of South Kingstown v. Stateof Rhode Island Commission for Human Rights and Rosemary R.Hobson, 659 A.2d 1099 (R.I. 1995), the Rhode Island Supreme Court considered the School Committee's appeal of the rights commission's decision. The Supreme Court first acknowledged that when the Superior Court justice upheld the rights commission's finding of illegal discrimination, the justice had not considered the decision rendered by the Education Commissioner. The Supreme Court recognized the disparity between the Education Commissioner's finding of good and just cause for termination and the rights commission's finding of an unlawful and discriminatory termination. The Supreme Court concluded that the rights commission committed an error of law and reversed the Superior Court justice's decision. Accordingly, the Supreme Court remanded the rights commission matter back to the Superior Court. However, the Supreme Court ordered this court to review both the Education Commissioner's decision and that of the rights commission in an attempt to harmonize them. The Supreme Court opined as follows:
 "We are of the opinion that it is unseemly and inappropriate for two state agencies to arrive at completely opposite conclusions based upon substantially the same evidence, particularly when one agency has educational expertise (the education commissioner) and the other does not (the rights commission).
 * * * The rights commission is not an agency that is clothed with the authority to review decisions by the education commissioner, although it has coordinate powers to adjudicate claims of unfair-employment practices and specific violations of Sec. 28-5-7
discrimination because of a handicap. * * *
 It is necessary for the Superior Court and ultimately this court to attempt to harmonize the overlapping jurisdiction of these two agencies."
In furtherance of this order, the Supreme Court set forth a standard of review for this court to utilize in harmonizing these two incompatible agency decisions.
 Standard of Review
In its order of remand, the Rhode Island Supreme Court set forth the following standard of review for this court to employ in resolving the appeal of these two incompatible agency decisions.
 "* * * we further require that on remand the Superior Court justice consider both the decision of the rights commission and the decision of the education commissioner that preceded it. If both agencies consider the same question on the same evidence, then we would authorize the trial justice to give effect to the first decision unless it is clearly erroneous on the entire record."
School Committee, 659 A.2d at 1103.
Ms. Hobson maintains that this court should not apply this standard of review to this matter. Specifically, Ms. Hobson notes that the Supreme Court requires invocation of this standard only if the court finds that the agencies' decisions involve "the same question on the same evidence." Ms. Hobson asserts that the ultimate question before each tribunal is different, therefore, the rule set forth by the Supreme Court does not apply to this matter. This court disagrees.
In considering this matter on appeal, the Supreme Court recognized that "it is unseemly and inappropriate for two state agencies to arrive at completely opposite conclusions based upon substantially the same evidence." School Committee, 659 A.2d at 1103. Furthermore, the Supreme Court set forth the above-referenced standard because it recognized the "necess[ity] for the Superior Court and ultimately this court to attempt to harmonize the overlapping jurisdiction of these two agencies."Id. The Human Rights Commission was charged with determining whether the School Committee had complied with R.I.G.L. 28-5-1,et seq. by not committing any discriminatory practice in terminating Rosemary Hobson. That required a determination of whether Rosemary Hobson was in fact someone with a (1) handicap or disability who was (2) otherwise qualified for the job. The Education Commissioner had to determine whether "good and just cause" existed to terminate Ms. Hobson's tenure as a teacher. Both of these agencies must review Ms. Hobson's qualifications and performance, as well as the School Committee's actions, to determine whether Ms. Hobson was lawfully terminated. Although these agencies may not initially frame the question in identical terms, ultimately, this court finds that they determine the same issue: whether the School Committee properly terminated Ms. Hobson's employment. An examination of the parties' arguments before both tribunals supports the finding that the agencies undertook substantially the same inquiry. The School Committee argued before both agencies that it terminated Ms. Hobson's employment because of poor job performance over a number of years. In opposition, Ms. Hobson argued before both administrative bodies that the School Committee improperly terminated her because of her disability. Furthermore, this standard of review comports with other decisions of the Rhode Island Supreme Court regarding overlapping jurisdiction. For example, in Dept. of Corrections of State of R.I. v. Tucker,657 A.2d 546 (R.I. 1995), the court held that a prior decision of a Personnel Appeal Board had a res judicata effect on proceedings before the Commission for Human Rights with regard to allegations which were or could have been raised before the Board by the discharged employee. See also, Restatement (Second) Judgments, Section 83 (same res judicata rule should apply to decision of quasi-administrative tribunal as to judgment of court). After a careful review of the record, this court finds that in addition to undertaking the same material inquiry, the agencies considered the same material evidence in reaching their decisions.
In light of the these findings, this court will now apply the standard of review as set forth by the Rhode Island Supreme Court to the case at bar. The Board of Regents approved the October 2, 1990 decision of the Education Commissioner on October 16, 1991. The Human Rights Commission issued its final decision on November 15, 1991. Accordingly, this court must look to the first decision issued, that of the Board of Regents, and affirm that decision, unless this court determines that it is "clearly erroneous on the entire record."
 Discussion
In reviewing the final decision of the Board of Regents for clear error, this court first discusses Ms. Hobson's appeal of the denial of backpay for the delayed procedure (procedural due process issue). Next, this court will review the record to determine whether it supports the Board's finding of good and just cause for the termination of Ms. Hobson.
The plaintiff, Ms. Hobson, argues that she is entitled to an award of backpay for the period of time from the Education Commissioner's determination that her procedural rights had been violated to the time that the School Committee finally gave her a hearing on remand. In support of this contention, Ms. Hobson primarily relies upon the case of Paul J. Desrochers v. SchoolCommittee of the Town of Johnson (January, 1976). That court held that the School Committee's failure to provide the teacher with a written statement of the cause of non-renewal of the contract, warranted a reinstatement of the teacher with backpay and benefits. In contrast, the defendant, School Committee, contends that Ms. Hobson is not entitled to backpay or any other compensation for the procedural violation. Rather, defendant argues that the appropriate remedy for a violation of a procedural right is the institution of that proper procedure. As support for this proposition, the defendant cites to de Koevendv. Board of Education of West End School District RE-2,688 P.2d 219 (Colo. 1984) (where school board's order of dismissal invalidated because of procedural violation, teacher not entitled to reinstatement with backpay, but entitled to a review with proper procedure) and Ferrario v. Board of Education of Escanaba,395 N.W.2d 195 (Mich. 1986) (teacher not entitled to reinstatement or an award of backpay when teacher's dismissal was for cause and State Tenure Commission had not yet determined the merits of the teacher's case).
In reviewing the relevant case law, this court determines that the weight of the authority favors the defendant's position. Plaintiff has failed to submit, nor has this court located, any case in which a court allowed an award of backpay or compensation for a procedural violation when the teacher was dismissed because of misconduct, insubordination, incompetence, or any other just cause. For example in Faville v. Ambach, 507 N.Y.S.2d 310 (A.D. 3 Dept. 1986), the court concluded that although a lengthy delay on the part of the Commissioner of Education in rendering a decision to dismiss the teacher could not be condoned, it did not provide a basis to reinstate the teacher found to be incompetent. Likewise, in Rathbone v. Board of Ed. of Hamilton, 365 N.Y.S.2d 909, 47 A.D.2d 172 (1975), the court found that where the Board of Education had violated a probationary teacher's procedural rights by failing to provide her with sufficiently specific notice of reasons for discontinuance of her services, but there was no apparent violation of the probationary teacher's substantive rights, it was inappropriate to order reinstatement and back pay. See also, Schaub v. Chamberlain Bd. of Educ.,339 N.W.2d 307 (S.D. 1983) (no backpay warranted for procedural violation where dismissed teacher's evaluations indicated deficiencies in teaching). Although, in Rhode Island, a teacher has been awarded backpay for a procedural violation, Desrochers,
infra, that teacher was initially dismissed out of budgetary necessity, not from any misconduct on his part. After a careful review of the relevant case law, this court finds that the School Committee's decision not to award backpay to the plaintiff to remedy her delayed hearing is supported by competent legal authority and is not clearly erroneous. Therefore, the plaintiff is not entitled to backpay for the procedural violation as long as this court does not disturb the School Committee's finding that Ms. Hobson was incompetent to teach.
In addition to the error alleged by Ms. Hobson regarding the appropriate remedy for the procedural violation, Ms. Hobson alleges that the Education Commissioner's decision fails because it is clearly erroneous based upon the entire record. In considering these errors alleged by Ms. Hobson, this court relies upon well-settled case law which defines the court's duty in reviewing an agency decision for clear error. Specifically, this court must "examine the record to determine whether there is any legal evidence or reasonable inference therefrom to support the findings of the [agency]." Hamaker v. Gagnon, 297 A.2d 351 (R.I. 1972).
Applying this test to the instant matter, this court finds that the Education Commissioner's decision is not clearly erroneous because it is based upon competent, legal evidence found in the certified record. First, plaintiff alleges that the Commissioner erred when he found that the residual effects of her brain hemorrhage did not cause her poor teaching performance in 1995-1996. This court disagrees. Plaintiff relies upon the testimony of Dr. Francis Sparadeo, plaintiff's physician, in which he opined as follows:
 "My impression of that was her negative or poor performance during the school year is probably related to the fact that she has not completed her recovery process. . ."
(Sparadeo, 3/31/87, p. 98). In reviewing the record, this court recognizes that this one qualified statement does not specify "* * which, if any, professional inadequacies were attributable to the residual deficits in brain function." (Commissioner decision 10/2/90, p. 11). Furthermore, a careful review of the entire record, including hundreds of pages of medical reports and testimony from several medical experts, reveals no competent evidence to support plaintiff's claim that she is medically incapable of performing her teaching duties. Accordingly, this court finds that the certified record supports the Commissioner's finding that Ms. Hobson failed to prove that effects of her brain hemorrhage caused her poor teaching performance in the 1995-1996 school year. Second, plaintiff argues that the record does not support the Commissioner's finding that good and just cause existed for her termination. However, a careful review of the entire record reveals ample evidence to support the Commissioner's finding. The testimony of school administrators Campbell and Hines establish serious performance deficiencies by Ms. Hobson from the 1982-1983 school year including inadequate student discipline, instructional techniques, general classroom performance, and organization. (See Hines 5/28/87 Tr. at 2; Campbell 5/4/87 Tr. at 53; Campbell 3/31/87 Tr. at 9-10). Notably, the onset of these serious performance deficiencies significantly pre-date Ms. Hobson's subarachnoid hemorrhage. Furthermore, South Kingstown School Department personnel records indicate that these problems, as well as negative parental perceptions, persisted throughout the 1983-84 and 1984-85 school years. (See, for example, Ex. 2 "1983-1984 Professional Staff Evaluation" 7/5/84; Ex. 3 "1984-1985 Professional Staff Evaluation" 6/11/85, 9/17/85). After thoroughly reviewing the entire record, this court finds that it amply supports the Commissioner's finding that Ms. Hobson's poor performance constituted good and just cause for termination. With respect to Ms. Hobson's third argument, this court finds that Ms. Hobson has failed to provide competent legal authority to support her claim for relief arising out of an alleged breach of an agreement to evaluate her medical condition. Furthermore, in light of the findings this court has made regarding the competent evidence in the record, this court finds that Ms. Hobson's additional argument regarding parental perceptions also lacks merit.
 Conclusion
For all of the foregoing reasons, this court discerns no error in the decision reached by the Education Commissioner and approved by the Board of Regents. The certified record supports the findings of fact of the Education Commissioner and approved by the Board of Regents. Accordingly, Ms. Hobson's appeal is denied, and the Board of Regents' decision is affirmed. Furthermore, since this court has found that the Board of Regents' decision is not clearly erroneous, this court must give effect to that decision, and the decision of the Commission for Human Rights is hereby vacated.
Counsel shall prepare the appropriate order for entry of judgment.
[1] Although this matter involves numerous proceedings that culminated in an appeal of a decision of the Commissioner of Education (education commissioner) and an appeal of the Rhode Island Commission for Human Rights (rights commission), the education commissioner and the rights commission based their decisions upon evidence that the parties submitted during a post-termination hearing before the school committee. Therefore, in order to present the facts of this matter, this court refers primarily to testimony and exhibits submitted to the school committee, the rights commission, and the education commissioner. The court will identify each reference to the numerous proceedings and witnesses' testimony by the name of the witness, the date of the testimony and the transcript page number(s). This court will identify other items in the record by exhibit number (if applicable), the name of the document and the date of the document.
[2] The record reveals that the School Committee received 45 written documents into evidence at the May 4, 1987 hearing, including Mrs. Hobson's performance evaluations, written complaints from parents, correspondence between members of the school department and Mrs. Hobson, Mrs. Hobson's test results from the Yale University Clinical Neuropsychology Department and deposition testimony of Dr. Francis Sparadeo. (See Joint Exhibit C "Exhibits"). The parties presented additional documents into evidence at subsequent hearings. Furthermore, on 5/4/87, Arthur Campbell testified; on 5/8/87, Kimberlee John Sass, Ph.D., Susan Soloway Spencer, M.D., Pam Husband and Keith Munroe testified; on 5/28/87, Richard J. Hines testified, and on 6/10/87, to Mr. Campbell, Dr. Sparadeo, and Rosemary Hobson testified before the Committee.