**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1228-19

IN THE MATTER OF RUTGERS,
THE STATE UNIVERSITY OF
NEW JERSEY,

     Petitioner-Appellant,

and

OFFICE PROFESSIONAL
EMPLOYEES INTERNATIONAL
UNION, LOCAL 153,

     Respondent-Respondent.

_____

Argued December 3, 2020 – Decided May 24, 2021

Before Judges Ostrer, Accurso, and Vernoia.

On appeal from the New Jersey Public Employment Relations Commission, PERC No. 2020-21.

John J. Peirano argued the cause for appellant (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; John J. Peirano, of counsel and on the briefs; David M. Alberts, on the briefs).

Matthew G. Connaughton argued the cause for respondent Office Professional Employees

International Union, Local 153 (Cohen, Leder, Montalbano & Connaughton, LLC, attorneys; Matthew G. Connaughton, on the brief).

Ramiro Perez, Deputy General Counsel, argued the cause for respondent New Jersey Public Employment Relations Commission (Christine Lucarelli, General Counsel, attorney; Ramiro Perez, on the statement in lieu of brief).

PER CURIAM

Rutgers, the State University of New Jersey (Rutgers), appeals from the Public Employment Relations Commission's (PERC) final decision denying Rutgers's request for an order restraining the binding arbitration of a grievance filed by the Office and Professional Employees International Union, Local 153 (Local 153). The grievance asserted that Rutgers violated the parties' collective negotiations agreement by transferring a security officer from his assignment at University Hospital (UH) to the Rutgers–Newark campus. In the scope of negotiations proceeding following Rutgers's petition to restrain the arbitration, PERC found the transfer was "predominantly disciplinary" and that Rutgers did not present an operational justification for the transfer. PERC determined the transfer was not an exercise of a managerial prerogative and therefore Local 153's grievance was arbitrable. We reverse PERC's determination because the

2

factual findings upon which it is based are not supported by substantial credible evidence.

I.

Local 153 is the collective negotiations representative of the regular full-time and part-time security officers, public safety dispatchers, and senior security officers employed by Rutgers.[1]  At all times pertinent to the pending appeal, Rutgers and Local 153 were parties to a collective negotiations agreement.  In May 2017, Local 153 filed a grievance alleging Rutgers violated the agreement by "unjustly transfer[ring] . . . [security officer] Keith Russell," who Local 153 alleged is a "[s]hop [s]teward," "without '[j]ust [c]ause.'"

In its request for a panel of arbitrators to hear and decide the grievance, Local 153 generally described the facts underlying the dispute: "On or about April 6, 2017, [s]hop [s]teward and [s]ecurity [o]fficer, Keith Russell was retaliated against for performing his duties assigned and exercising his right as

---

[1]  The collective negotiations unit also includes some temporary full-time staff employed as security officers, public safety dispatchers, and senior security officers.

a [s]hop [s]teward," and "[a]s a result, he was transferred to another worksite/post."[2]

Following the assignment of an arbitrator, Rutgers filed a petition for a scope of negotiations determination, claiming Local 153's "request for arbitration interfere[d] with [Rutgers's] non-negotiable managerial prerogative to determine reporting locations for its security officers." In other words, Rutgers claimed it exercised a non-negotiable management prerogative when it transferred Russell from his post at UH to the Rutgers–Newark campus.

In support of its petition, Rutgers submitted certifications from Abdel Kanan, Director of Labor Relations–Rutgers Biomedical Health Sciences, and Michael J. Rein, Deputy Chief of University Police of the Rutgers University

---

[2] The record is bereft of any competent evidence Russell was a shop steward at the time of the transfer. As PERC correctly notes in its decision, N.J.A.C. 19:13-3.6(f)(1) provides that facts set forth in the parties' briefs in a scope of negotiations proceeding shall be "supported by certification(s) based upon personal knowledge." Although Local 153 claimed Russell was a shop steward, the assertion is untethered to any evidence. Before PERC and again on appeal, Local 153 has relied exclusively on the facts asserted by Rutgers, as set forth in the certifications of Rutgers's representatives Abdel Kanan and Michael J. Rein. The certifications refer to Local 153's claim that Russell was a shop steward, but neither certification states as a matter of fact that Russell was a shop steward at the time of his transfer. Local 153 does not argue on appeal that PERC erred by failing to find Russell's transfer is a mandatory subject of negotiations because he was a shop steward. See In re Loc. 195, IFPTE, 88 N.J. 393, 419 (1982) (holding a public employer's transfer of union officials is not a management prerogative and is therefore negotiable).

Police Department. In his certification, Kanan explained the circumstances giving rise to the grievance, and he described Rutgers's filing of the petition for the scope of negotiations determination. Kanan's certification also included as attachments the collective negotiations agreement and correspondence concerning UH, Russell, and Russell's transfer. Kanan certified that Rutgers is party to a continuing services agreement with UH, pursuant to which Rutgers agreed to "provide police and security services as requested by UH[,] and UH agreed to pay for the services provided."

In Rein's certification, he explained that on or about April 5, 2017, UH notified Rutgers "that due to an incident with [Russell] and [the] UH employee assigned to drive for the president of UH, . . . UH was 'restricting' [Russell] from working anywhere pertaining to [UH]." Rein annexed to his certification an email from a UH representative which states, "At the request of the UH [chief executive officer], I am requesting that Keith Russell be removed from all assignments associated with [UH]."

Rein also certified that "[a]s a result" of UH's request, Rutgers's security supervisors informed Russell about "the information received from UH and told [Russell] that he was being moved to another post outside of UH." The supervisors also advised Russell "the reassignment was not considered

5

discipline[]," but rather was "management[] exercising its right to reassign personnel." Rutgers then transferred Russell to its Newark campus. The transfer did not result in any change of Russell's "shift or days off, reporting relationship, salary, benefits, or title."

The facts asserted in Kanan's and Rein's certifications were not refuted by any other evidence. Local 153 did not submit any affidavits or certifications in opposition to the facts set forth by Kanan and Rein.

In its final decision on Rutgers's scope of negotiations petition, PERC summarized the facts set forth in Kanan's and Rein's certifications and noted Local 153 claimed in its grievance that Russell was transferred in retaliation for performing his duties as a shop steward. PERC explained that its inquiry was limited to determining "whether the subject matter in dispute is within the scope of collective negotiations."

PERC found that although "the substantive decision to transfer or reassign an employee is 'preeminently a policy determination' . . . beyond the scope of negotiations or binding arbitration," "disciplinary review procedures are mandatorily negotiable[,] and binding arbitration may be used as a means for resolving a dispute over a disciplinary determination . . . ." PERC reasoned that

resolution of the scope of negotiations petition required it to decide if Russell's transfer was predominantly disciplinary in nature.

PERC found Russell's transfer was predominantly disciplinary in nature because "the transfer . . . was precipitated by [the] alleged incident of misconduct"—"the altercation between [Russell] and UH's [p]resident's driver"—and because Rutgers did not present any "operational justification" for the transfer. PERC concluded the dispute which formed the subject of the grievance was arbitrable because the transfer was predominantly disciplinary.

Rutgers appeals from PERC's final decision. It claims there is no evidence supporting PERC's finding that Russell's transfer was predominantly disciplinary and PERC erred by ignoring evidence establishing there was an operational need for the transfer—responding to UH's request that Russell provide no further security services at its facility.

II.

It is well-established that the issues that "may be submitted to binding arbitration in the public sector [are] circumscribed." Teaneck Bd. of Educ. v. Teaneck Tchrs. Ass'n, 94 N.J. 9, 13 (1983) (quoting Kearny PBA Loc. #21 v. Kearny, 81 N.J. 208, 215 (1979)). In the public sector, "prerogatives of management, particularly those involving governmental policy making, cannot

A-1228-19

be bargained away to be determined by an arbitrator."  Ibid. (quoting Kearny, 81 N.J. at 215).  "To be arbitrable, a matter must qualify as one on which the parties may negotiate.  A matter which is not legally negotiable in the first place cannot be arbitrable."  Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 160 (1978).  As a result, "[t]he scope of arbitrability is generally coextensive with the scope of negotiability."  Teaneck Bd. of Educ., 94 N.J. at 14.

"[T]he scope of public employment negotiation is divided, for purposes of analysis, into two categories of subject matter comprised of mandatorily negotiable subjects and nonnegotiable matters of governmental policy."  Robbinsville Twp. Bd. of Educ. v. Wash. Twp. Educ. Ass'n, 227 N.J. 192, 198 (2016).  "A scope-of-negotiations determination is the method by which it is decided 'whether or not a particular subject matter is negotiable . . . .'"  Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 613 (2020) (quoting In re Loc. 195, IFPTE, 88 N.J. 393, 401 (1982)).  N.J.S.A. 34:13A-5.4(d) "assign[s] . . . PERC . . . 'the power and duty'" to determine "in the first instance . . . 'whether a matter in dispute is within the scope of collective negotiations.'"  Id. at 614.  "PERC is [thus] the forum for the initial determination of whether a matter in dispute is within the scope of collective

8

negotiations." Ibid. (alteration in original) (quoting State v. State Supervisory Emps. Ass'n, 78 N.J. 54, 83 (1978)). "Where PERC concludes that a particular dispute is not within the scope of collective negotiations, and thus not arbitrable, it must issue an injunction permanently restraining arbitration." Ridgefield Park, 78 N.J. at 154.

We accord substantial deference to PERC's scope of negotiations determinations. Twp. of Franklin v. Franklin Twp. PBA Loc. 154, 424 N.J. Super. 369, 377 (App. Div. 2012). They will be upheld unless "arbitrary, capricious or unreasonable, . . . lack[ing in] fair support in the evidence," or in "violat[ion of] a legislative policy expressed or implicit in the governing statute." Ibid. (quoting Commc'ns Workers of Am., Local 1034 v. N.J. State Policemen's Benev. Ass'n, Local 203, 412 N.J. Super. 286, 291 (App. Div. 2010)); see also City of Jersey City v. Jersey City Police Officers Benev. Ass'n, 154 N.J. 555, 568 (1998) (explaining PERC's scope of negotiations determinations "will stand unless . . . clearly demonstrated to be arbitrary or capricious" (quoting In re Hunterdon Cnty. Bd. of Chosen Freeholders, 116 N.J. 322, 329 (1989))). We uphold PERC's findings that are supported by sufficient credible evidence, In re Bridgewater, 95 N.J. 235, 246 (1984), but its "interpretation of a statute or its determination of a strictly legal issue" is not

entitled to any special deference, Bd. of Educ. v. Neptune Twp. Educ. Ass'n, 144 N.J. 16, 31 (1996) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

The "time-honored test" that must be satisfied to support a finding that an issue is negotiable requires that "(1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy." Robbinsville Twp. Bd. of Educ., 227 N.J. at 199 (quoting In re Loc. 195, 88 N.J. at 404). A subject "that affects the work and welfare of public employees is negotiable only if it is a matter 'on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy.'" In re Loc. 195, 88 N.J. at 404 (quoting Paterson Police PBA Local No. 1 v. City of Paterson, 87 N.J. 78, 86 (1981)).

To determine "whether a negotiated agreement would significantly interfere with the determination of governmental policy," PERC is required "to balance the interests of the public employees and the public employer." Id. at 404-05. PERC's analysis must include "a weighing or balancing" to determine

whether the "dominant issue" concerns the exercise of a non-negotiable management prerogative. Bd. of Educ. of Woodstown-Pilesgrove Reg'l Sch. Dist. v. Woodstown-Pilesgrove Reg'l Educ. Ass'n, 81 N.J. 582, 591 (1980). As the Court explained in In re Local 195, "[w]hen the dominant concern is the government's managerial prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions." 88 N.J. at 405.

In In re County of Hudson, P.E.R.C. No. 87-20, 12 N.J.P.E.R. ¶ 17278, 1986 N.J. PERC LEXIS 345 (1986), PERC reviewed a scope of negotiations petition that sought to restrain arbitration over a grievance challenging two employees' transfers that were alleged to be disciplinary. PERC considered that "[t]he substantive decision to transfer . . . an employee is 'preeminently a policy determination' and beyond the scope of negotiations or binding arbitration," id. at 5 (quoting In re Loc. 195, 88 N.J. at 417), and also that N.J.S.A. 34:13A-5.3 provides in part that "disciplinary review procedures are mandatorily negotiable and binding arbitration may be used as a means for resolving a dispute over a disciplinary determination . . . ," id. at 6. PERC engaged in the analysis required by the Court in In re Local 195; it weighed the competing interests presented by the grievance and determined that "on balance" the transfers at issue

"predominantly involved a form of discipline triggering the application of N.J.S.A. 34:13A-5.3." Id. at 8. For that reason, PERC concluded the transfers were "predominantly disciplinary and therefore arbitrable." Ibid.; see also In re Rutgers, the State University, P.E.R.C. No. 2012-14, 38 N.J.P.E.R. ¶ 45, 2011 N.J. PERC LEXIS 125 at 9 (2011) (restraining arbitration of a grievance challenging the transfer of an employee because "[t]he facts in [the] record [were] not sufficient to categorize the [transfer] as disciplinary").

Here, PERC employed the same analysis and reasoning, and applied the same standard in its determination of Rutgers's scope of negotiations petition.[3]

---

[3]   We reject Rutgers's claim that PERC's reliance on the "predominantly disciplinary" standard is required by N.J.S.A. 34:13A-25 and N.J.S.A. 34:13A-27(a). N.J.S.A. 34:13A-25 provides that "[t]ransfers of employees by employers between work sites shall not be mandatorily negotiable except that no employer shall transfer an employee for disciplinary reasons," and N.J.S.A. 34:13A-27(a) provides in part that "[i]f there is a dispute as to whether a transfer of an employee between work sites . . . is disciplinary, [PERC] shall determine whether the basis for the transfer . . . is predominately disciplinary." N.J.S.A. 34:13A-27(b) further provides that "[i]f [PERC] determines that the basis for a transfer is predominately disciplinary, [PERC] shall have the authority to take reasonable action to effectuate the purposes of this act."
The "act" referred to in N.J.S.A. 34:13A-27(b) is Public Law 1989, Chapter 269, which consists of nine sections that are codified in N.J.S.A. 34:13A-22 to -29. The act supplemented the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -21, as it existed when Public Law 1989, Chapter 269 was enacted in 1990. The act has no application here because by definition the act applies only to employers that are "local or regional school district[s], educational services commission[s], jointure commission[s], county special

The parties do not challenge PERC's use of the predominantly disciplinary standard as the appropriate benchmark for the weighing and balancing of the competing interests at play where it is alleged a transfer constitutes an act of discipline. Further, we defer to PERC's judgment where, as here, its "expertise" in public sector employer-employee relations "is essential towards understanding the proper context of a dispute." In re Hunterdon Cnty., 116 N.J. at 328.

Rutgers argues PERC erred because its finding Russell's transfer was "predominantly disciplinary and therefore arbitrable" is not supported by the evidence. When an error in an administrative agency's fact finding is alleged, we decide only "'whether the findings made could reasonably have been reached on sufficient [or substantial] credible evidence present in the record[,]'

---

services school district[s], or board[s] or commission[s] under the authority of the [Commissioner of Education] or the State Board of Education." N.J.S.A. 34:13A-22. Rutgers does not fall within the list of employers to whom the act applies. As a result, the act's requirements, including those set forth in N.J.S.A. 34:13A-25 and -27, do not establish the standard for a scope of negotiations determination for Rutgers or any other public employer that does not fall within the act's definition of "employer" contained in N.J.S.A. 34:13A-22. Nonetheless, PERC adopted the "predominantly disciplinary" standard prior to the adoption of the act, see In re Cnty. of Hudson, 1986 N.J. PERC LEXIS 345 at 8, as the benchmark for the weighing and balancing of interests required in a scope of negotiations petition involving a grievance alleging a transfer constitutes discipline.

considering 'the proofs as a whole.'" In re Taylor, 158 N.J. 644, 656 (1999) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). It is "well-established . . . that PERC's decisions are entitled to substantial deference. PERC has a special expertise with regard to the terms of public employment and review of its factual determinations is limited." Dep't of Corr. v. Commc'ns Workers of Am., 240 N.J. Super. 26, 33 (App. Div. 1990) (citation omitted).

PERC's determination that Russell's transfer is predominantly disciplinary is not supported by either sufficient or substantial credible evidence. To the contrary, the evidence undermines PERC's factual findings. PERC found the transfer was "precipitated by an alleged incident of misconduct" involving an "altercation between [Russell] and UH's [p]resident's driver." There is, however, no evidence Russell engaged in any "misconduct" or that either UH or Rutgers ever asserted Russell engaged in misconduct. Kanan's and Rein's certifications, which constitute the only evidence presented to PERC, do not refer to any alleged misconduct on Russell's part, do not aver Russell engaged in any misconduct, and do not describe any misconduct. Similarly, the certifications do not describe a purported "altercation" or allege Russell was engaged in an altercation. Consistent with that lack of evidence, Rutgers affirmatively advised Russell the transfer was not disciplinary. Thus, PERC's

14

finding that Russell's "misconduct"—his involvement in an "altercation"—precipitated his transfer is unsupported by any evidence.

To be sure, UH reported there was an "incident" that caused it to request that Russell no longer be assigned as a security officer at UH's facility. UH's actions or intentions are not, of course, at issue here because Russell was neither employed by nor transferred by UH. The evidence shows that UH determined, for reasons known only to it, that it would not permit Rutgers to assign Russell to perform security services at UH's facility. As Kanan explained in his certification, Rutgers's agreement with UH states that Rutgers will provide security services "as requested by UH." The unrefuted evidence established UH requested that the security services provided by Rutgers not include the assignment of Russell to UH's facilities.

Unlike PERC, Rutgers chose not to assume the incident involved either misconduct or an altercation, and there is no evidence Rutgers took any action to discipline Russell. As Rein explained, Rutgers transferred Russell not as an act of discipline, but only "as a result" of UH's request that Russell not provide security services at UH's facility. Stated differently, the evidence presented showed Rutgers was contractually obligated to provide UH with the security services UH requested, and UH requested that Russell not provide any security

15

services at its facility. The evidence showed Russell was transferred solely to accommodate UH's requirement that Russell no longer be allowed at its facility, and it undermines PERC's finding that Rutgers failed to provide an "operational justification" for the transfer. Rutgers explained in detail its operational justification—UH's refusal to allow Russell to return to its facility—and PERC erred by failing to acknowledge Rutgers transferred Russell solely in response to UH's request.

We thus reverse PERC's finding that Russell's transfer was predominantly disciplinary. The limited findings of fact upon which PERC's determination is based find no support in the evidence. In fact, the evidence permits only one conclusion: Russell's transfer was not predominantly disciplinary but instead was in response to UH's request. The dominant issue presented by the grievance is Rutgers's decision to transfer Russell for non-disciplinary, operational reasons based on UH's request that Russell no longer provide security services at its facility. That issue is non-negotiable and therefore not arbitrable. See In re Loc. 195, 88 N.J. at 405; see also In re Cnty. of Hudson, 1986 N.J. PERC LEXIS 345 at 5; In re Rutgers, 2011 N.J. PERC LEXIS 125 at 8. PERC abused its discretion by concluding otherwise. See In re Reallocation of Prob. Officer, 441 N.J. Super. 434, 450 (App. Div. 2015) (overturning agency decision where "there

16

[were] insufficient facts [in the record] to support the decision . . . , rendering it arbitrary and capricious").

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION